[Submitting counsel below]

UNITED STATES DISTRICT COURT
OF NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB<br><br>**PLAINTIFF'S TRIAL BRIEF RE: DUTY AND SUPERSEDING CAUSE ISSUES**<br><br>Judge: Honorable Charles R. Breyer<br>Ctrm.: D. Ariz., 501 |
| This Document Relates to:<br><br>*Jaylynn Dean v. Uber Techs., Inc.*,<br>N.D. Cal. No. 23-cv-06708<br>D. Ariz. No. 25-cv-4276 | |

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA
PHOENIX DIVISION

| | |
|---|---|
| JAYLYNN DEAN,<br><br>      Plaintiff,<br><br>  v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>      Defendants. | No. 25-cv-4276-PHX-CRB<br><br>Judge: Honorable Charles R. Breyer<br>Ctrm.: 501 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

I.  There are multiple bases under Arizona law for assigning Uber an affirmative duty
    to protect passengers from drivers. ............................................................................ 1

    A.  Common Carrier ................................................................................................ 1

        1.  Under common law principles applied in Arizona, a common
            carrier is a company that offers transportation to the public for
            money. ....................................................................................................... 1

        2.  In Arizona, common carriers owe their passengers an affirmative
            duty of protection against the risk of harm from third parties. ................ 4

        3.  Plaintiff did not waive a negligence claim based on common-carrier
            duties in Arizona. ..................................................................................... 5

    B.  Voluntary Undertaking ...................................................................................... 6

        1.  Arizona recognizes duties based on voluntary undertakings. .................. 6

        2.  A duty based on a voluntary undertaking can include an affirmative
            duty of protection from third parties. ....................................................... 8

II. Under Arizona law, whether third-party conduct is a superseding cause can be, and
    often is, a question of law. ........................................................................................ 8

    A.  If a cause is not intervening, it cannot be superseding. .................................... 9

    B.  Third-party conduct is not a superseding cause where the defendant's
        actions increase the foreseeable risk of a particular harm occurring through
        the conduct of a third party. ............................................................................ 10

    C.  A harmful force is not a superseding cause where the defendant owes a
        duty of care to protect against that very hazard. ............................................ 12

CONCLUSION ................................................................................................................ 13

# INTRODUCTION

Plaintiff respectfully submits this trial brief on two material issues of law: (1) whether Uber's duty in this case involves an affirmative duty to protect passengers from drivers; and (2) some of the circumstances under which, as a matter of law, another actor's conduct is not a superseding cause.

## I. There are multiple bases under Arizona law for assigning Uber an affirmative duty to protect passengers from drivers.

There are two bases in Arizona law for assigning Uber an affirmative duty of protection: voluntary undertaking and common carrier. *See Hogue v. City of Phoenix*, 378 P.3d 720, 722 (Ariz. App. 2016) ("Whether a duty exists is a purely legal issue.").

### A. Common Carrier

#### 1. Under common law principles applied in Arizona, a common carrier is a company that offers transportation to the public for money.

Arizona applies general common law principles under which a common carrier is a company that offers transportation to the public for money. *See*, *e.g.*, *Lowrey v. Montgomery Kone, Inc.*, 42 P.3d 621, 626 n.7 (Ariz. App. 2002) (citing, among others, California, Montana, Illinois, and Alabama law); *Nichols v. City of Phoenix*, 202 P.2d 201, 204-05 (Ariz. 1949) (citing Oregon law); *Bloxham v. Glock Inc.*, 53 P.3d 196, 199 (Ariz. App. 2002) (citing Restatement); *S. Pac. Co. v. Hogan*, 108 P. 240, 241 (Ariz. 1910) (citing federal common law). Under those principles, a "common carrier is generally defined as one who, by virtue of his calling and as a regular business, undertakes to transport persons or commodities from place to place, offering his services to such as may choose to employ him and pay his charges." *McCoy v. Pac. Spruce Corp.*, 1 F.2d 853, 855 (9th Cir. 1924); *see also Las Vegas Hacienda, Inc. v. C.A.B.*, 298 F.2d 430, 434 (9th Cir. 1962) ("[T]he dominant factor in fixing common carrier status at common law is the presence of a 'holding out' to transport the property or person of any member of the public who might choose to employ the proffered service."). As Arizona courts explain in the related context of common carrier of goods, the inquiry is functional and common-sense:

> It is not necessary, however, in order to constitute a party a common carrier, that it operate its means of conveyance between fixed termini, nor upon regular schedules, nor at a uniform or fixed tariff. … And it in no way alters the character of a common

carrier that it makes specific and individual contracts, either written or oral, for each business transaction. … Nor can a carrier which holds itself out to the public as being a common carrier divest itself of that character because it has a secret or private intention to reserve the right to refuse to serve such parties as it objects to, or because it may, even upon occasion, exercise such right, particularly if such reservation and exercise thereof is in reality, though not ostensibly, merely for the purpose of divesting itself of the character and responsibility of a common carrier.

*Claypool v. Lightning Deliv. Co.*, 299 P. 126, 128 (Ariz. 1931); *accord, e.g.*, *Ariz. Corp. Comm'n v. Cont'l Sec. Guards*, 443 P.2d 406, 416 (Ariz. 1968). The "law will look to the real transaction, and if the contract be, in fact, one for transportation, the undertaking will be considered as that of a common carrier." *Orcutt v. Tucson Warehouse & Transfer Co.*, 318 P.2d 671, 673 (Ariz. 1957); *see also, e.g.*, *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 764 (4th Cir. 2018) ("A common carrier need not be available to every member of the public; it is enough that the service be available on open terms to even a segment of the population.").

As do other states, Arizona courts recognize that the common-carrier category is not limited to a fixed set of transportation businesses (e.g., railroads). *See Lowrey*, 42 P.3d at 626 (noting that "passenger elevators have long been classified among the group of common carriers"); *Mahl v. Burnette*, 2021 WL 50153, at *1-2 (Ariz. App. Jan. 6, 2021) (noting that it was uncontested that a "non-emergency medical transport [] van" was a common carrier).

Courts applying the common-law test routinely treat Uber as a common carrier. As this Court stated under Florida and Illinois law (indistinguishable from Arizona law): "There seemingly can be no doubt that … Uber would meet the definition of a common carrier." PTO 18 at 6. That is what the JCCP concluded last summer. *In re Uber Rideshare Cases*, JCCP No. 5188, at 9-16 (July 31, 2025) (granting summary judgment to plaintiffs on that point) ("*JCCP Order*"). Many courts have reached the same conclusion at the motion-to-dismiss stage. *See Doe v. Uber Techs., Inc.*, 184 F. Supp. 3d 774, 786-787 (N.D. Cal. 2016) (finding allegations sufficient to establish "Uber is a common carrier" because "Uber's services are available to the general public and [] Uber charges customers standardized fees for car rides"); *Doe v. Uber Techs, Inc.*, 2019 WL 6251189, at *6 (N.D. Cal. 2019) (holding "Uber's status as an app-based transportation network does not preclude it as a matter of law from being held liable as a common carrier"); *Murray v. Uber Techs., Inc.*, 486 F. Supp. 3d 468, 475-76 (D. Mass. 2020) (finding allegations sufficient to plead that Uber's "ride-

sharing service is available to the general public"); *Doe v. Uber Techs.*, 2021 WL 2382837, at *5 n.5 (D. Md. June 9, 2021) ("Uber offers no plausible reason to believe that it is not a common carrier[.]"); *Hoffman v. Silverio-Delrosar*, 2021 WL 2434064, at *5 (D.N.J. June 15, 2021) ("[Uber] Defendants are a common carrier because they employ drivers who transport passengers for a fee.").

Uber has cited one case for the proposition that it is not a common carrier: *Doe v. Uber Techs., Inc.*, 551 F. Supp. 3d 341 (S.D.N.Y. 2021). But that case found inadequate pleading where the plaintiff did not provide any "argument about how or why Uber qualifies as a common carrier under New York law." *Id.* at 359. In particular, the court highlighted that the relevant New York statute differed in language from the general common law standard, and so the court required particularized pleading before letting the claim proceed. *Id.* There is no such issue in Arizona.

Uber has suggested the evidence will show it is merely a pairing service, not a transportation service. But the crucial question is how Uber "holds itself out to the public." *Doe*, 184 F. Supp. 3d at 786; *see also Claypool*, 299 P. at 128. If Uber regularly holds itself out as a provider of transportation, or even goes further and vouches for the safety of its rides, it is a common carrier. *See*, *e.g.*, *Namisnak v. Uber Techs., Inc.*, 444 F. Supp. 3d 1136, 1143 (N.D. Cal. 2020) ("Uber's claim that it is 'not a transportation company' strains credulity, given the company *advertises itself* as a 'transportation system.'"); *JCCP Order* at 12 ("[A] number of cases have considered contentions that ride-sharing companies such as Lyft and Uber are in the business solely of creating technological platforms, not of transporting passengers, and have dismissed them out of hand.") (quoting *People v. Uber Techs., Inc.*, 56 Cal. App. 5th 266, 292 (2020)). In addition, as the evidence at trial will show, Uber's involvement is not confined to brokering services offered by, vouched for, and provided by others. Rather, Uber controls ride booking, driver-rider pairing, dispatching, fare-setting, payment processing, vehicle quality, route setting, ride monitoring, communications, and incident response.

Finally, Uber has suggested it is not a common carrier because passengers must register to use the service. But "common carrier liability can attach even for transportation services that are of possible use to only a fraction of the population." *JCCP Order*, at 14 (quoting *Doe*, 2019 WL

6251189, at *6); *see also Hoffman v. Silverio-Delrosar*, 2021 WL 6091107, at *6 (D.N.J. Dec. 23, 2021) ("While true that Uber is only accessible to registered users, any person with a smart phone can download the app."); *Squaw Valley*, 2 Cal. App. 4th at 1509-10 ("To be a common carrier, the entity merely must be of the character that members of the general public may, if they choose, avail themselves of it."). Uber's transportation services are offered to any adult or teenager in the United States.

### 2. In Arizona, common carriers owe their passengers an affirmative duty of protection against the risk of harm from third parties.

Arizona has eliminated the "highest standard of care" for common carriers, and instead assigned common carriers only the duty of "reasonable care." *Nunez*, 271 P.3d at 1108. But "the existence of duty of care is a distinct issue from whether the standard of care has been met in a particular case." *Id.* (citation omitted). Thus, it remains Arizona law that common carriers have "broader duties … than … ordinary actors" do, including a duty to avoid harms created by third parties. *See id.* ("[C]ommon carriers have a special relationship with passengers," which "imposes a duty to avoid harm from risks created by the individual at risk as well as those created by a third party's conduct."); *see also id*. ("Because common carriers have a special relationship with passengers, their duties traditionally have extended beyond the mere obligation not to create a risk of harm."); *Ft. Lowell-NSS Ltd. P'ship v. Kelly*, 800 P.2d 962, 967 (Ariz. 1990) (quoted with approval in *Nunez*) (noting that common carriers "are often held to possess an affirmative duty to guard the safety of their [passengers]."). For that reason, since *Nunez*, Arizona courts reiterate that common carriers owe affirmative duties of protection. *See Reid v. Reid*, 2013 WL 6147934, at *3 (Ariz. App. Nov. 21, 2013) ("Likewise, the duty to protect exists in relationships such as carrier-passenger…"); *Ortiz v. Espinoza*, 2013 WL 6571809, at *2 (Ariz. App. 2013) ("[T]he relevant relationships giving rise to an affirmative duty of protection [include] those of common carrier and passenger …."); *Boisson v. Ariz. Bd. of Regents*, 343 P.3d 931, 925 n.4 (Ariz. App. 2015) ("In the common carrier context, *Nunez* … applied Restatement § 40," which imposes an affirmative duty of protection).

### 3. Plaintiff did not waive a negligence claim based on common-carrier duties in Arizona.

Uber contends that Plaintiff waived a negligence claim in Arizona based on a common-carrier's duty. Not so. The Master Complaint pleaded both negligence claims ("Claim B") and common-carrier non-delegable duty claims ("Claim E"). Plaintiffs' negligence claims, designed as they were to apply to all Plaintiffs in this MDL, pleaded "claims for negligence under *all theories* that may be actionable under any applicable state laws." MC ¶ 363 (emphasis added). Those "theories" specifically included any duty based on "a special relationship" between "Uber" and "its passengers." MC ¶ 363(j). Uber highlights that the Master Complaint excluded "Arizona" from a separate paragraph mentioning "common carrier" specifically, but omits that this paragraph refers to a common carrier's "duty to use the utmost and highest care and vigilance." MC ¶ 363(l). *That* duty does not exist in Arizona; but the affirmative duty of protection (subject to the reasonable care standard) does.

Then, Uber moved to dismiss Plaintiffs' common-carrier non-delegable duty claims ("Claim E") in four states. ECF 384, 386, 387, 388. Uber did not move to dismiss the negligence claims ("Claim B"). The Court dismissed non-delegable duty claims in Florida and Texas due to the presence of statutes eliminating common-carrier liability. PTO 17 at 31 & n.11; PTO 18 at 5-6. But the Court held that where such statutes did not exist or did not apply, common carriers owed non-delegable duties that give rise to "an independent basis for vicarious"—not direct—"liability." PTO 17 at 32-35; PTO 18 at 5-7.

The parties then entered into a stipulation "that recognizes the Court's Orders on California, Florida, Texas, Illinois, and New York Law (PTO Nos. 17, 18) and[] appl[ies] those Orders pursuant to the laws of Arizona, Georgia, Nevada, Pennsylvania, and Virginia." ECF 1932 at 1. As to "Claim E: Common Carrier's Non-Delegable Duty," the parties stipulated that "Plaintiffs do not assert any claims based on the 'common carrier's non-delegable duty' under the laws of Arizona …." *Id.* at 2. The stipulation said nothing about negligence claims ("Claim B"), and for good reason: The "Court's Orders" that the stipulation "appl[ied]" did not say anything about Plaintiffs' negligence claims because Uber did not move to dismiss those claims.

Even assuming any ambiguity in the Master Complaint, Plaintiffs had no obligation to plead any precise legal theories. *See Skinner v. Switzer*, 562 U.S. 521, 530 (2011) ("[U]nder the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) … generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument."). And, of course, Rule 15 permits amendment of a pleading, even after trial, to conform to the evidence. Fed. R. Civ. P 15(b).

Uber has suggested some unspecified prejudice from this made-up waiver. There can be no prejudice. The facts that would establish Uber as a common carrier are fundamental to its nationwide business model and public statements. They have been fully discovered. Ms. Dean's case was included in Wave 1 along with four other cases (B.L., A.R., WHB318, and WHB823) from California or North Carolina, states with laws that indisputably implicated whether Uber is a common carrier. Thus, fact and expert discovery by definition encompassed all questions relevant here. Uber cannot identify any Arizona-specific issues, for there are none.

Finally, Uber's theory is untenable in multi-district litigation. Uber would require precise pleading of duty—a legal issue that shouldn't even need to be pleaded at all—at an early stage on behalf of thousands of plaintiffs. At the time the Master Complaint was filed, there had been no determinations on which law even applied to any given plaintiff's case. Jaylynn Dean is an Oklahoma resident who was assaulted in Arizona when she was there temporarily for flight school—it was not obvious that Arizona law would even apply to her case. Uber's theory would make master complaints, common and useful administrative devices that streamline MDL proceedings, impossible to write, given the risk that inadvertent ambiguity in legal claims could forever bar every plaintiff from pursuing those claims. Such a restriction is incompatible with both the procedural flexibility underlying 28 U.S.C. § 1407 and Federal Rule of Civil Procedure 16.1, as well as the liberal approach to pleading reflected in Rules 8 and 15.

**B.** **Voluntary Undertaking**

**1.** **Arizona recognizes duties based on voluntary undertakings.**

In Arizona, a party's voluntary undertakings can create a duty, including an affirmative duty to protect from third parties if doing so is within the scope of the undertaking. Arizona applies

§ 323 of the Restatement (Second) of Torts. Under that section:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (2) the harm is suffered because of the other's reliance upon the undertaking.

*Guerra v. State*, 348 P.3d 423, 425 (Ariz. 2015) (quoting Restatement (Second) of Torts § 323 (1965)). So, for example, in *Stanley v. McCarver*, 92 P.3d 849 (Ariz. 2004), a plaintiff received a chest x-ray "as part of a pre-employment tuberculosis screening." *Id.* at 850. The prospective employer contracted with a third party x-ray company "to take the x-ray"; that company, in turn, contracted with a physician to "interpret[] the x-ray." *Id.* That physician found concerning abnormalities and sent his report to the x-ray company, which then sent it to the prospective employer. *Id.* No one told the plaintiff anything; later she was diagnosed with lung cancer. *Id.*

Despite the lack of a "doctor-patient relationship," the Arizona Supreme Court found the doctor owed a duty under § 323. He "agree[d], for consideration to interpret [the plaintiff's] confidential medical record, her x-ray, and accurately report the results to" the x-ray company. *Id.* at 853. Having "placed himself in such a position, his special skill and training made him aware of abnormalities in the x-ray that one lacking such training could not observe." *Id.* By "virtue of his undertaking to review [the plaintiff's] x-ray, [the doctor] placed himself in a unique position to prevent future harm to [the plaintiff]" and so owed a duty. *Id*; *see also Lloyd v. State Farm Mut. Auto Ins. Co.*, 860 P.2d 1300, 1303 (Ariz. App. 1992) (insurance company assumed a duty to defend against claim not covered by policy when "unknown claims persons in the" company's "office told" plaintiff "over the telephone that" the company "would 'take care of it'" and hired an attorney to do so); *Monroe v. Basis Sch., Inc.*, 318 P.3d 871, 874 (Ariz. App. 2014) ("[I]f a school voluntarily undertakes to provide protection at a street crossing, a duty of care is imposed on that conduct."); *Wine Educ. Council v. Ariz. Rangers*, 2020 WL 7352632, at *8 (D. Ariz. Dec. 15, 2020) ("Mr. Winthrop assumed a duty to act with due care when he agreed to become a member of AZR, agreed to undertake a position on the committee, and undertook to open an Amex card in his own name to spend money on AZR's behalf.").

## 2. A duty based on a voluntary undertaking can include an affirmative duty of protection from third parties.

Courts applying the same Restatement section (or the related section 324A) recognize that a voluntary undertaking may create an affirmative duty of protection, so long as such a duty is within the scope of the undertaking. *See, e.g.*, *Bourgonje v. Machev*, 841 N.E.2d 96, 107 (Ill. App. 2005) (noting that "landlord-tenant relationship is not a 'special relationship' imposing a general duty on a landlord to protect her tenants against third-party criminal acts," but that "the voluntary undertaking doctrine forms an exception to this general rule"); *Rowe v. State Bank of Lombard*, 531 N.E.2d 1358, 1365 (Ill. 1988) ("A landlord may be held liable for the criminal acts of third parties when it voluntarily undertakes to provide security measures …."); *Wright v. PRG Real Estate Mgmt., Inc.*, 826 S.E.2d 285, 293 (S.C. 2019) (similar); *Mullins v. Pine Manor College*, 449 N.E.2d 331, 336 (Mass. 1983) ("Colleges generally undertake voluntarily to provide their students with protection from the criminal acts of third parties."); *Karzoun v. State*, 2025 WL 3525997, at *3 (Conn. Super. Ct. Dec. 2, 2025) ("UConn and the UConn police had no general duty to protect UConn students from foreseeable risks, but it is undisputed that UConn and the UConn police undertook to provide security at all Spring Weekend events, even private, off-campus events. … [B]ecause that undertaking was intended to protect students from risks created by third parties, UConn and the UConn police had an additional duty based upon the Restatement … § 323 to protect students from those risks.").

## II. Under Arizona law, whether third-party conduct is a superseding cause can be, and often is, a question of law.

In Arizona, "proximate causation is broken when some other intervening act is a superseding cause of an injury or death." *State v. Aragon*, 505 P.3d 657, 661 (Ariz. 2022). Arizona applies the same causation rules, including superseding cause, in the criminal context as in the tort context. *Id.* An intervening act "is superseding only if it was both unforeseeable and when with the benefit of 'hindsight' it may be described as abnormal or extraordinary." *Petolicchio v. Santa Cruz Cnty. Fair & Rodeo Ass'n, Inc.*, 866 P.2d 1342, 1349 (Ariz. 1994).

In Arizona, there are at least three circumstances in which, as a matter of law, third-party conduct cannot be a superseding cause.

### A. If a cause is not intervening, it cannot be superseding.

To "determine whether an event is a superseding cause of an injury or death, the threshold issue is whether it is an intervening event." *Aragon*, 505 P.3d at 661. If "it is not an intervening event, it is not a superseding cause as a matter of law." *Id.* If, "and only if, the event is intervening, the question *then* becomes whether it was unforeseeable and extraordinary." *Id.* at 662.

An intervening cause is a "later cause of independent origin." *Ontiveros v. Borak*, 667 P.2d 200, 205-06 (Ariz. 1983). An "intervening force is defined as being one that actively operates in producing harm *after* the original actor's act or omission has been committed." *Aragon*, 505 P.3d at 661 (citation and alteration omitted); *see also Torres v. Jai Dining Servs. (Phoenix) Inc.*, 497 P.3d 481, 484 (Ariz. 2021) ("An intervening cause is an independent cause that occurs between a defendant's … conduct and the final harm."); *Rossell v. Volkswagen of Am.*, 709 P.2d 517, 525 (Ariz. 1985) ("An intervening cause is one which intervenes between a defendant's … act and the final result.").

So, "where the defendant's course of conduct actively continues up to the time the injury is sustained, then any outside force which is also a substantial factor in bringing about the injury is a concurrent cause and *never* an 'intervening force.'" *Aragon*, 505 P.3d at 661 (citation omitted). As the Second Restatement (cited by Arizona courts) states:

> [If] the effects of the [defendant's] ... conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's innocent, tortious, or criminal act is also a substantial factor in bringing about the harm does not protect the [defendant] from liability.

Restatement (Second) of torts § 439 (1965) (quoted in *Aragon*). This "would be a concurrent cause of the injury, not an intervening cause." *Aragon*, 505 P.3d at 661.

For example, in *Aragon*, the defendant was charged with speeding and striking a vehicle in which the passengers were not wearing seatbelts. *Id.* at 659. The driver contended that the lack of seatbelts was a superseding cause that precluded his conviction for manslaughter. *Id.* The Arizona Supreme Court rejected that argument (and the requested jury instruction) as a matter of law: "We conclude that [the victim's] alleged acts and omissions cannot be intervening forces because they occurred simultaneously with [the defendant's] alleged excessive speeding." *Id.* at 662. Therefore,

"the issue of 'superseding cause' is never reached." *Id.* (citation omitted); *see also Nichols v. City of Phoenix*, 202 P.2d 201 (Ariz. 1949) (driver running a stop sign not an intervening cause of harm caused by city bus "speeding and not keeping a lookout").

  **B. <u>Third-party conduct is not a superseding cause where the defendant's actions increase the foreseeable risk of a particular harm occurring through the conduct of a third party.</u>**

  Applying §§ 442B, 448, and 449 of the Second Restatement, the Arizona Supreme Court holds that "[w]hen a defendant's actions increase the foreseeable risk of a particular harm occurring through the conduct of a third party, that defendant is not relieved of liability." *Petolicchio,* 866 P.2d at 1349; *see also* Restatement § 442B ("Where the negligent conduct of the actor creates or increases the risk of a particular harm ... the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person *and* is not within the scope of the risk created by the actor's conduct.") (emphasis added). This principle applies to criminal conduct like any other. *See Petolicchio*, 866 P.2d at 1349 (alcohol theft and provision to minor); Restatement § 448 (discussing "intentional tort or crime"). Accordingly, "Arizona courts have adopted th[e] position" that "an intervening criminal act is not necessarily a superseding cause that relives a negligent party of liability." *Petolicchio*, 866 P.2d at 1349.

  Arizona courts often apply this rule to preclude conduct from being a superseding cause as a matter of law. In *Austin Mut. Ins. Co. v. Aldecoa*, 2011 WL 4794936 (Ariz. App. Oct. 11, 2011), for example, two children drowned when one grandparent left "a pool gate unlocked" and another "fail[ed] to supervise the children the following day." *Id.* at *3. The insurance company argued that the failure to supervise was a superseding cause that broke the chain of causation between "leaving the gate unlocked" and the deaths. *Id.* at *3. The court affirmed summary judgment against the insurance company. The court explained that "[o]ne foreseeable risk of not locking the gate was that it granted unsecured accesses to the water…" *Id.* Accordingly, "[w]here, as in this case, a reasonable fact-finder could not conclude the intervening act was unforeseeable, a court may determine it was not a superseding cause as a matter of law." *Id*.

  Similarly, in *State v. Aragon*, 473 P.3d 358 (Ariz. App. 2020), *aff'd on other grounds*, 505

P.3d 657 (Ariz. 2022), the driver defendant argued that the other motorist's use of marijuana, failure to use a seatbelt, and failure to yield were superseding causes of the other motorist's son's death. *Id.* at 360. The intermediate appellate court, assuming that the cause was intervening, found reversible error in the trial court's giving of a superseding cause instruction. The court agreed with the state that, because "the risk of harm [the defendant] foreseeable created was the same risk that injured [the motorist and his son, [the motorist's] conduct cannot be a superseding cause." *Id.* The driver's "speeding created the foreseeable risk that a fatal accident could occur. That [the motorist's] conduct increased the risk does not entitle [the defendant] to a superseding-cause instruction." *Id.* at 361. The defendant argued that "the foreseeability of an intervening cause should be a jury question," but the court disagreed: "[A] superseding-cause instruction—and any concomitant evaluation of foreseeability—is inappropriate here because [the motorist's] conduct only increased the risk caused by [the defendant's] conduct." *Id.* at 362.[1]

Other cases are similar. *See State v. Slover*, 204 P.3d 1088, 1093 (Ariz. App. 2009) (affirming refusal to give superseding-cause instruction where a DUI defendant's passenger crawled out of the vehicle into the water and drowned due to his intoxication, and explaining that the defendant's "conduct of driving while intoxicated was the very reason the victim had ended up near or in a creek, intoxicated, with head injuries, and, at the very least, increased the foreseeable risk that the victim would die in an accident"); *Duncan v. State*, 754 P.2d 1160, 1162-63 (Ariz. App. 1988) (affirming refusal to give a superseding-cause instruction, and explaining that the risk created by bringing loaded weapon to training exercise encompasses risk caused by failure of instructor to inspect firearm, barring superseding-cause defense); *State v. Vandever*, 119 P.3d 473, 475 (Ariz. App. 2005), *disapproved of on other grounds*, 505 P.3d 657 (Ariz. 2022) (affirming refusal to give superseding-cause instruction, and explaining that other driver exceeding speed limit not superseding cause of collision when defendant's illegal conduct created foreseeable risk of collision); *Jaeger v. Petroni*, 650 P.2d 476, 477-78 (Ariz. App. 1982) (error to give superseding-cause instruction where driver negligently pursued another vehicle, and, after the pursuit had ended,

---

[1] In so holding, *Aragon* expressly rejected the defendant's reliance on *Dupray v. JAI dining Servs. (Phoenix), Inc.*, 432 P.3d 937 (Ariz. App. 2018), the case Uber relies on here.

the other vehicle continued to accelerate and crashed, and explaining that, even though the "chase" had ended, the jury "could not rationally have found that the *possibility* of [the other vehicle's] continued flight … was unforeseeable, and not a normal consequence of the situation").

   C. **A harmful force is not a superseding cause where the defendant owes a duty of care to protect against that very hazard.**

Finally, a third-party's conduct cannot be a superseding cause where the defendant's duty "is designed, in part at least, to protect the other from the hazard of being harmed by the intervening force." *Rourk v. State*, 821 P.2d 273, 279 (Ariz. App. 1991) (citation omitted). Under the Second Restatement:

> If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.

Restatement § 449; *see also Petolicchio*, 866 P.2d at 1349 (citing § 449). Therefore, "the doctrine" of superseding cause "is not applied[] when the duty of care claimed to have been violated is precisely a duty to protect against ordinarily unforeseeable conduct …." *Beul v. ASSE Int'l, Inc.*, 233 F.3d 441, 447 (7th Cir. 2000) (Posner, J.). The "existence of the duty presupposed a probable, therefore a foreseeable, consequence of its breach." *Id*; *see also* Restatement § 449, cmt. b ("The happening of the very event the likelihood of which makes the actor's conduct negligent and so subjects the actor to liability cannot relieve him from liability. The duty to refrain from the act committed or to do the act omitted is imposed to protect the other from this very danger. To deny recovery because the other's exposure to the very risk from which it was the purpose of the duty to protect him resulted in harm to him, would be to deprive the other of all protection and to make the duty a nullity.").

So, for example, in *DeMontiney v. Desert Manor Convalescent Ctr.*, 695 P.2d 255 (Ariz. 1985), a plaintiff brought a wrongful death action against a health facility and others after a "mental hold" patient held at the facility committed suicide. *Id.* at 256. The court noted that "under the general rule, suicide by the injured party is a superseding cause which is neither foreseeable nor a normal incident of the risk created and therefore relieves the original actor from liability for the death resulting from the suicide." *Id.* at 259 (citation omitted). The court

PL'S TRIAL BRIEF RE:
DUTY AND SUPERSEDING CAUSE ISSUES
N.D. CAL. NO. 3:23-MD-03084; D. ARIZ. NO. 25-CV-4276

recognized, however, that "a different rule applied to 'institutional' suicide cases" because "various kinds of mental institutions have a *specific* duty of care to avoid the suicide of certain patients." *Id.* The court explained that, in that situation, the parties have a "special relationship" that "gives rise to a duty to aid or protect," and analogized to "[t]he duty of a common carrier to its passengers." *Id.* at 260.

The court ordered the trial court to instruct the jury that the defendant's duty of ordinary care extended to preventing suicide—precluding superseding cause as a matter of law. *Id.* at 260. As the Seventh Circuit later put it, citing *DeMontiney*, "a hospital that fails to maintain a careful watch over patients known to be suicidal is not excused by the doctrine of superseding cause from liability for a suicide, any more than a zoo can escape liability for allowing a tiger to escape and maul people on the ground that the tiger is the superseding cause of the mauling." *Beul*, 233 F.3d at 447.

## CONCLUSION

The above sets out controlling legal principles on some of the duty and superseding cause issues in this trial.

Dated: January 5, 2026                          Respectfully submitted,

By: */s/ Sarah R. London*
    Sarah R. London (SBN 267083)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
    Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel*

## **FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: January 5, 2026  By:  */s/ Andrew R. Kaufman*
Andrew R. Kaufman