# **<u>Exhibit A</u>**

[Submitting counsel below]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION | No. 3:23-md-03084-CRB |
| | **PLAINTIFF'S NOTICE OF MOTION AND OMNIBUS MOTIONS IN LIMINE** |
| This Document Relates to: | |
| *Jaylynn Dean v. Uber Techs., Inc.*, N.D. Cal. No. 23-cv-06708 D. Ariz. No. 25-cv-4276 | Judge: Honorable Charles R. Breyer Date:  January 6, 2026 Time:  10:00 A.M. PT Ctrm.:  6-17th Floor |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 6, 2026, at 10:00 a.m., before the Honorable Charles R. Breyer, Plaintiff will and hereby does, move for an order granting Plaintiff's motions in limine as described herein.

1

2 **Table of Contents**

3

4    LEGAL STANDARD ...................................................................................................... 1

ARGUMENT .................................................................................................................... 1

5
    I.    Plaintiff's Motion in Limine No. 1: Exclude Argument or Evidence on the Absence of
6    Criminal Charges, Prosecution, or Conviction of Plaintiff's Uber Driver.................................. 1

    II.    Plaintiff's Motion in Limine No. 2: Exclude Argument or Evidence Regarding ███
7    ███████████████████████████████. .................................. 3

8    III.    Plaintiff's Motion in Limine No. 3: Exclude Argument or Evidence Related to
    Plaintiff's Sexual History............................................................................................................... 4

9    IV.    Plaintiff's Motion in Limine No. 4: Exclude Argument or Evidence Regarding
    Irrelevant and Unduly Prejudicial Aspects of Plaintiff's Personal Life....................................... 5

10
    V.    Plaintiff's Motion in Limine No. 5: Exclude Argument or Evidence of Plaintiff's Post-
11    Incident Rideshare Use. ................................................................................................................. 6

12    VI.    Plaintiff's Motion in Limine No. 6: Exclude Argument or Evidence Based on Uber's
    Post-lawsuit Investigation into Complaints from "Jennifer," Including Late-Produced
13    Documents Indicating that "Jennifer" Engaged in Uber Support Abuse..................................... 7

    VII.    Plaintiff's Motion in Limine No. 7: Exclude Argument or Evidence Referencing Non-
14    Material Amendments to Plaintiff Dean's Plaintiff Fact Sheet. ................................................... 8

15    VIII.    Plaintiff's Motion in Limine No. 8: Exclude Untimely or Non-Produced Evidence. ..... 9

    IX.    Plaintiffs' Motion in Limine No. 9: Exclude Argument or Evidence Regarding
16    Contingency Fees, Attorney Advertising, or "Attorney-Driven" Litigation............................. 11

17    X.    Plaintiff's Motion in Limine No. 10: Exclude Argument or Evidence Concerning the
    Personal Use of Uber by Counsel, Witnesses, or Their Family or Friends. ............................. 13

18    XI.    Plaintiff's Motion in Limine No. 11: Exclude Argument or Evidence That Uber Was
    Legally Prohibited or Constrained From Implementing Safety Measures................................. 14

19    XII.    Plaintiff's Motion in Limine No. 12: Exclude Argument or Evidence of Non-Profit
    Endorsements of Uber's Safety Data or Policies Related to Sexual Assault.............................. 17

20    XIII.    Plaintiff's Motion in Limine No. 13: Exclude Argument or Testimony Regarding
    "Low" or "Rare" Prevalence of Sexual Violence on Uber's Platform Compared to Society in
21    General or Other Forms of Transportation or Other Irrelevant. Scenarios. ............................... 18

22    XIV.    Plaintiff's Motion in Limine No. 14: Exclude Argument or Evidence that Uber has
    Helped Reduce Drunk Driving Rates.......................................................................................... 21

23    XV.    Plaintiff's Motion in Limine No. 15: Exclude Argument or Evidence that Uber Drivers
    Are Safer Drivers than the Average Driver................................................................................. 22

24    XVI.    Plaintiff's Motion in Limine No. 16: Exclude Argument or Evidence that Uber Drivers
    Prefer the Independent Contractor Model.................................................................................... 23

25    CONCLUSION ............................................................................................................. 24

26

27

28

## **Table of Authorities**

### CASES

*Aumand v. Dartmouth Hitchcock Med. Ctr.*, 611 F. Supp. 2d 78 (D.N.H. 2009).........................9
*Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003).................................................15
*Castro v. County of Los Angeles*, 2015 WL 4694070 (C.D. Cal Aug. 3, 2015) .........................2
*Chalco v. Belair*, 2019 WL 456162 (D. Conn. Feb. 5, 2019)...........................................2
*Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir.1992) ......................................15
*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060 (9th Cir. 2017) .................................1
*Clark v. City of Tucson*, 2010 WL 11515475 (D. Az. Nov. 1, 2010) ...................................2
*Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186 (9th
    Cir. 2001) ....................................................................................15
*Dubey v. Concentric Healthcare*, 2025 WL 2480927 (D. Az. Aug. 28, 2025) ............................1
*Freeman v. Astrue*, 405 Fed. Appx. 148 (9th Cir. 2010) .............................................8
*Gomez v. Am. Med. Sys. Inc.*, 2021 WL 12313068 (D. Az. June 17, 2021) .............................22
*Heath v. Cast*, 813 F.2d 254 (9th Cir. 1987) ......................................................2
*In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 2095829 (D. Az. May 3, 2018).................12
*In re Ford Motor Co. DPS6 Prods. Liab. Litig.*, 2019 WL 7171542 (C.D. Cal. Oct. 31, 2019)...12
*In re Lidoderm Antitrust Litig.*, 2016 WL 4191612 (N.D. Cal. 2016).................................16
*In re Xyrem Antitrust Litig.*, 2025 WL 860505 (N.D. Cal. Mar. 19, 2025) ...........................16
*In re Yasmin*, 09-cv-10012 (09-md-2100-DRH-MDL 2100), Doc. No. 262 (Phila. Ct. Cmn.
    Pleas., Mass Torts Div. Dec. 22, 2011).........................................................13
*In re: Tylenol (Acetaminophen) Marketing*, 2016 WL 3125428 (E.D. Pa. June 3, 2016)............13
*Jones v. Travelers Cas. Ins. Co. of Am.*, 304 F.R.D 677 (N.D. Cal. 2015).........................10
*Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033 (9th Cir. 2009).............15
*Liberal v. Estrada*, 2011 WL 3956068 (N.D. Cal. Sept. 7, 2011) ....................................7
*Madrigal v. Allstate Indem. Co.*, 2015 WL 12748277 (C.D. Cal. Nov. 5, 2015) ......................15
*McCarrell v. Hoffman-LaRoche, Inc. and Roche Labs., Inc.*, ATL-L-1951-03-MT (N.J. Law Div.
    Apr. 17, 2007) ................................................................................13
*Nichols v. Am. Nat. Ins. Co.*, 154 F.3d 875 (8th Cir. 1998) .......................................5
*O'Connor v. Uber Techs, Inc.*, 82 F. Supp. 3d 1133 (N.D. Cal. 2015) ..............................23
*R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240 (9th Cir. 2012)......................14
*Ramachandran v. City of Los Altos*, 2022 WL 316679 (N.D. Cal. Feb. 2, 2022) .......................3
*Rawcar Grp., LLC v. Grace Med., Inc.*, 2014 WL 12199979 (S.D. Cal. Oct. 21, 2014) ..............16
*Rivera v. Ford Motor Co.*, 2020 WL 4001914 (C.D. Cal. Mar. 12, 2020)..............................12
*Rodriguez v. Google LLC*, 2025 WL 2237720 (N.D. Cal. Aug. 6, 2025) ...............................12
*Roguz v. Walsh*, 2013 WL 1498126 (D. Conn. Apr. 5, 2013)...........................................2
*S.M. v. J.K.*, 262 F.3d 914 (9th Cir. 2001) .......................................................5
*Shenwick v. Twitter, Inc.*, 2021 WL 1232451 (N.D. Cal. Mar. 31, 2021) ............................16
*Spencer v. McDonald*, 705 Fed. Appx. 386, 388 (6th Cir. 2017) .....................................2
*Tobeler v. Colvin*, 749 F.3d 830 (9th Cir. 2014)...................................................3
*U.S. v. Bracy*, 2022 WL 17801133 (E.D.N.Y. Dec. 19, 2022) .........................................2
*U.S. v. Brown*, 2018 WL 1903121 (D. Nev. Apr. 19, 2018)............................................4
*U.S. v. Heller*, 551 F.3d 1108 (9th Cir. 2009).....................................................1
*U.S. v. Holguin*, 51 F.4th 841 (9th Cir. 2022).....................................................20
*U.S. v. Porter*, 562 F. Supp. 3d 1162 (E.D. Cal. 2022).............................................4

### RULES

Fed. R. Evid. 401 ............................................................................1, 7, 13, 21
Fed. R. Evid. 402 ...................................................................................1, 4
Fed. R. Evid. 403 ............................................................................1, 4, 9, 18
Fed. R. Evid. 404(a) ...............................................................................5
Fed. R. Evid. 404(b)(1)............................................................................5
Fed. R. Evid. 412 Advisory Comm. Notes .............................................................4
Fed. R. Evid. 412(a) ...............................................................................4

i

Fed. R. Evid. 412(b)(2) ............................................................................... 4
Fed. R. Evid. 412(c) .................................................................................... 4
Fed. R. Evid. 602 ...................................................................................... 20
Fed. R. Evid. 609 ........................................................................................ 6
Fed. R. Evid. 701 ........................................................................................ 3
Fed. R. Evid. 702 ...................................................................................... 18
Fed. R. Evid. 801(c) .................................................................................. 18
Fed. R. Evid. 802 ...................................................................................... 18

## LEGAL STANDARD

Motions in limine are a "procedural mechanism to limit in advance testimony or evidence in a particular area." *U.S. v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Like other pretrial motions, motions in limine are "useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am. Corp*., 866 F.3d 1060, 1070 (9th Cir. 2017).

Evidence must be relevant. Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. The Court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "The party offering the evidence and testimony at trial bears the burden of proof that it is relevant under Rule 401 and not prejudicial under Rule 403." *Dubey v. Concentric Healthcare*, 2025 WL 2480927, at *2 (D. Az. Aug. 28, 2025).

## ARGUMENT

### I.    Plaintiff's Motion in Limine No. 1: Exclude Argument or Evidence on the Absence of Criminal Charges, Prosecution, or Conviction of Plaintiff's Uber Driver.

Plaintiff moves to exclude any evidence, testimony, or argument that Hassan Turay, her Uber driver, was not arrested, charged, prosecuted, convicted, or that a criminal investigation was closed without charges.

Facts about criminal proceedings have no bearing on Plaintiff's civil claims against Uber. Criminal standards (beyond a reasonable doubt) differ from those governing civil liability (preponderance of the evidence). A prosecutor's decision to charge—or not charge—reflects considerations distinct from whether Plaintiff can meet the civil standard of proof. The absence of a criminal charge does not tend to prove or disprove, for example, Uber's breach of duty, foreseeability, or failure to act reasonably in preventing Plaintiff's sexual assault. Nor does it prove or disprove whether Turay sexually assaulted Plaintiff. Permitting Uber to reference the outcome or status of a criminal investigation would improperly invite jurors to conflate the separate standards in criminal and civil cases and give undue weight to prosecutorial decisions

that have nothing to do Uber's civil liability in this case. Further, allowing Uber to emphasize that a driver was "never charged" or "never convicted" would chill survivors' willingness to seek civil redress and undermine the integrity of the civil justice process.

Judge Schulman excluded such evidence in the related Uber JCCP trial. *See In re Uber Rideshare Cases*, JCCP, Superior Court, Case No. CJC-21-005188, at 18 (Aug. 29, 2025), Ex. 1, attached to 12/16/25 Declaration of Roopal P. Luhana, Esq. ("Luhana Decl.")[1]. This Court should do the same. *See, e.g., Heath v. Cast*, 813 F.2d 254, 260 (9th Cir. 1987)(evidence related to dismissal of criminal charges is "more prejudicial than probative" of civil claims); *Castro v. County of Los Angeles*, 2015 WL 4694070, at *1 (C.D. Cal Aug. 3, 2015)(excluding evidence of lack of criminal charges because "the standard of proof in the instant civil case diverges substantially from [] the standard required to bring criminal charges against an individual, [so] any probative value of the aforementioned evidence is substantially outweighed by the risk of unfair prejudice."); *Clark v. City of Tucson*, 2010 WL 11515475, at *8 (D. Az. Nov. 1, 2010)(excluding evidence of criminal charges in civil case because "the jury may give undue weight to the fact that charges were filed [][,] such evidence would confuse the jury given that Plaintiff is not on trial on those charges in this action. Any probative value derived from the charges is substantially outweighed by unfair prejudice to Plaintiff [].").[2]

---

[1] All exhibits are attached to the Luhana Declaration.

[2] *See also Spencer v. McDonald*, 705 Fed. Appx. 386, 388, 390-91 (6th Cir. 2017)(affirming exclusion of evidence of sexual assault investigation that did not result in criminal charges, finding it irrelevant and unduly prejudicial); *Chalco v. Belair*, 2019 WL 456162, at *5-6 (D. Conn. Feb. 5, 2019)(excluding evidence of defendant's arrest and subsequent criminal acquittal: "[n]either the probable cause nor reasonable doubt standard is relevant here. The arrest and acquittal are not only irrelevant they would not aid the jury because they are based on different factual, legal and procedural standards. [] If the Court admitted this evidence, it would have to explain these differences to the jury. This would not only unjustifiably confuse the issues and likely mislead the jury, but it would be a waste of time."); *U.S. v. Bracy*, 2022 WL 17801133, at *8 (E.D.N.Y. Dec. 19, 2022)("[defendant] does not have evidence of an acquittal—and evidence of charges that were dropped for unknown reasons is even less relevant than an acquittal. The fact that the state charges were dismissed is hearsay and is not relevant to [defendant]'s culpability [in the instant action]"); *Roguz v. Walsh*, 2013 WL 1498126, at *10 (D. Conn. Apr. 5, 2013)("arrest and prosecution have little probative value" to civil case).

Further, introducing the subject of criminal proceedings would likely spawn a collateral "mini-trial" necessitating testimony from law enforcement officers or legal experts regarding prosecutorial discretion and resources—factors that often dictate decisions in criminal proceedings. These issues would waste time and confuse the jury.

## II.     Plaintiff's Motion in Limine No. 2: Exclude Argument or Evidence Regarding ███████████████████████████████████████████████████████████████

Plaintiff moves to exclude any evidence, testimony, or argument related to Plaintiff's speculation regarding ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████ Fed. R. Evid. 701 limits lay testimony to that which is (1) "rationally based on the witness's perception," (2) "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and (3) "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Courts consistently hold that medical diagnoses fall outside the scope of Rule 701 because they require expert testimony and are an improper subject for lay witnesses. *See Ramachandran v. City of Los Altos*, 2022 WL 316679, at *5 (N.D. Cal. Feb. 2, 2022)("[plaintiff] and other lay witnesses also may not testify regarding any diagnoses he has received" because "[l]ay witness testimony is incompetent when it consists of a medical diagnosis, because medical diagnoses are beyond the competence of lay witnesses to make")(quoting *Tobeler v. Colvin*, 749 F.3d 830, 833 (9th Cir. 2014)).

██████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ Whatever probative value Plaintiff's testimony on this point might have (and there is none) is far

1    outweighed by the unfair prejudice and confusion it would cause. *See* Fed. R. Evid. 402 and 403;

2    *see also U.S. v. Brown*, 2018 WL 1903121, at *3 (D. Nev. Apr. 19, 2018)("[C]ertain stigmas

3    attach to any mental illness labeling," making "the low probative value of layperson testimony

4    regarding a mental illness evaluation [] substantially outweighed by [] unfair prejudice … under

5    Rule 403.").

6    **III.    Plaintiff's Motion in Limine No. 3: Exclude Argument or Evidence Related to Plaintiff's Sexual History.**

7

8        Plaintiff moves to exclude argument or evidence related to Plaintiff's sexual history.[3] Rule

9    412 broadly prohibits evidence offered to prove: (1) "that a victim engaged in other sexual

10   behavior" or (2) "a victim's sexual predisposition." Fed. R. Evid. 412(a). This rule protects sexual

11   assault survivors from embarrassment, bias, and sexual stereotyping that inevitably accompany

12   public disclosure of intimate sexual details. *See* Fed. R. Evid.  412 Advisory Comm. Notes

13   (principal purpose is "to safeguard the alleged victim against the invasion of privacy, potential

14   embarrassment and sexual stereotyping").

15       "Sexual behavior" under Rule 412 includes all activities involving physical sexual

16   contact, such as sexual intercourse or touching, while "sexual predisposition" covers evidence

17   with a sexual connotation that does not refer directly to physical activity. *See U.S. v. Porter*, 562

18   F. Supp. 3d 1162, 1173 (E.D. Cal. 2022); Fed. R. Evid. 412 Advisory Comm. Notes. To introduce

19   evidence related to sexual behavior or predisposition, the proponent must meet a heightened

20   standard showing the "probative value substantially outweighs the danger of harm to any victim

21   and of unfair prejudice to any party." Fed. R. Evid. 412(b)(2). The Rule also imposes strict

22   procedural requirements — a written motion, filed in advance, that specifically describes the

23   evidence and states its intended purpose. Fed. R. Evid. 412(c).

24

25

26

27

---

[3] Plaintiff is not moving to exclude her sexual activity on the night she was raped.

1     ██████████████████ These questions and the evidence they seek to elicit fall squarely

2     within the protections of Rule 412. *See, e.g.*, *S.M. v. J.K.*, 262 F.3d 914, 919 (9th Cir. 2001),

3     amended, 315 F.3d 1058 (9th Cir. 2003)(quoting 124 Cong. Rec. H11944 (daily ed. Oct. 10,

4     1978))("excluding prior instances of sexual assault, in addition to prior accusations" serves Rule

5     412's "principal purpose…to protect rape victims from the degrading and embarrassing

6     disclosure of intimate details about their private lives."). Therefore, if Uber intends to offer such

7     evidence, it must comply with Rule 412(c)'s procedural requirements of filing a motion that

8     details the evidence and the purposes for its introduction. It has not done so.

9         To the extent Uber attempts to offer such evidence outside of Rule 412, such an attempt

10     fails scrutiny under Rule 403 and Rule 404.[4] The only foreseeable effect of the evidence is to

11     embarrass Plaintiff, trigger improper juror bias, and divert the jury to inflammatory, irrelevant,

12     and confusing issues, including suggestions that ████████████████████████████

13     ████████████ Such evidence should be excluded. *See, e.g.*, *U.S. v. Barrett*, 2023 WL

14     7528606, at *4 (E.D. Cal. Nov. 13, 2023) ("[t]he fact that a sexual assault victim has previously

15     accused others of assault is only relevant insofar as it can be shown convincingly that the other

16     charge was false"; admission also depends on the prior incident's similarity to the assault at issue;

17     absent such a showing, admitting such evidence would waste time, confuse the jury, and

18     needlessly embarrass the victim); *see also Nichols v. Am. Nat. Ins. Co*., 154 F.3d 875, 886 (8th

19     Cir. 1998) ("[i]nforming the jury that [plaintiff] had had an abortion present[s] the danger of

20     provoking the fierce emotional reaction that is engendered in many people when the subject of

21     abortion surfaces in any manner.").

22 **IV.**     **Plaintiff's Motion in Limine No. 4: Exclude Argument or Evidence Regarding
23         Irrelevant and Unduly Prejudicial Aspects of Plaintiff's Personal Life.**

24         Plaintiff moves to exclude any evidence, testimony, or argument regarding irrelevant and

25     unduly prejudicial aspects of Plaintiff's personal life, including issues and events related to any

---

26     [4] Fed. R. Evid. 404 states "[e]vidence of a person's character or character trait is not admissible to
27     prove that on a particular occasion the person acted in accordance with the character or trait."
Fed. R. Evid. 404(a). Further, evidence of "any other crime, wrong, or act is not admissible to
prove a person's character in order to show that on a particular occasion the person acted in
28     accordance with the character." Fed. R. Evid. 404(b)(1).

1   familial disputes, ███████████████████, and her parents' past criminal

2   convictions.

3       *First*, Plaintiff testified that ████████████████████████

4   ████████████████████████████████████████████████

5   ███████████████████████████████████████████████

6   ████████████████████████████████████████████████

7   █████████████████████████

8       *Second*, Mrs. Ramos testified to convictions in 2004 and 2011—neither involving

9   dishonesty or false statements. *See* N. Ramos Dep.at 33:3-25, 34:3-36:5. Uber also questioned

10   Mrs. and Mr. Ramos regarding a 2011 incident where a neighbor called the police related to an

11   alleged assault. *See* N. Ramos Dep. at 142:21-14. Mr. Ramos testified he was criminally charged

12   for the incident and pleaded no contest. *See* 8/26/25 Dep. of O. Ramos ("O. Ramos Dep.") at

13   106:2-107:4, Ex. 4. These convictions are all over ten years old and do not involve dishonesty or

14   false statements. *See* Fed. R. Evid. 609; *U.S. v. Lane*, 708 F.2d 1394, 1398 (9th Cir. 1983)

15   (impeachment not permitted under FRE 609(a) unless conviction involved "dishonesty or false

16   statement").

17       Whatever marginal probative value this criminal history—████████████████

18   ████████—could have is vastly outweighed by the significant risk of unfair prejudice, stigma, and

19   embarrassment to Plaintiff and her family. *See U.S. v. Kizer*, 569 F.2d 504, 506 (9th Cir.

20   1978)("there is widespread recognition that drug addiction is an issue fraught with potential

21   prejudice[.]"). There is no evidence that these issues caused or contributed to any mental health

22   issue or emotional trauma Plaintiff suffers from today due to the sexual assault. These issues

23   should be excluded.

24   **V.**    **Plaintiff's Motion in Limine No. 5: Exclude Argument or Evidence of Plaintiff's**

25         **Post-Incident Rideshare Use.**

26       Plaintiff moves to exclude any evidence, argument, or testimony regarding her post-

27   incident use of Uber, Lyft, or other rideshare services. After the subject sexual assault, Plaintiff

28   went in an Uber approximately three times with friends. *See, e.g.,* Dean Dep. at 185:5-14, 189:11-

16. Plaintiff's irrelevant use of rideshare services does not speak to whether the assault occurred, the severity of that assault, or her resulting damages. Fed. R. Evid. 401. The only conceivable purpose to introduce such evidence is to suggest—improperly—that Plaintiff's decision to use a rideshare again indicates exaggeration or falsification of the assault or her injuries. Such insinuations would be misleading and unduly prejudicial under Rule 403. For these reasons, Judge Schulman excluded the plaintiff's post-incident rideshare use in the JCCP bellwether case. *See* Ex. 1. This Court should do the same.

**VI.**    <u>Plaintiff's Motion in Limine No. 6:</u> **Exclude Argument or Evidence Based on Uber's Post-lawsuit Investigation into Complaints from "Jennifer," Including Late-Produced Documents Indicating that "Jennifer" Engaged in Uber Support Abuse.**

Plaintiff intends to introduce evidence that, at the time Plaintiff was sexually assaulted by driver Turay, he had two safety-related allegations made against him, including from a rider named "Jennifer." *See* 8/26/25 Brown 30(b)(6) Dep. at 520:17–22, 521:16–23, Ex. 5. Plaintiff anticipates Uber will attempt to introduce evidence showing that *after* Plaintiff initiated this lawsuit—six years after the report was made—Uber "re-classified" Jennifer's reports as "invalid", claiming that she engaged in Uber "support abuse" (i.e., reporting too many unsubstantiated allegations). This evidence is irrelevant and confusing and would cause extreme unfair prejudice to Plaintiff.

*First*, at the time Uber dispatched Hassan Turay to pick up Plaintiff, his record reflected a valid report of sexual assault by "Jennifer." Uber's decision to reclassify that report *after this litigation commenced*—and after Uber purportedly "investigated" the report further—has no bearing on Uber's assessment of Turay's risks at the time of the assault. *See Rivera Martinez v. GEO Grp.*, 2020 WL 2496064, at *9 (C.D. Cal. Jan. 23, 2020)(excluding post-lawsuit investigation report on other incidents issued eleven months after lawsuit was filed); *Liberal v. Estrada*, 2011 WL 3956068, at *3 (N.D. Cal. Sept. 7, 2011)(excluding evidence of knowledge gained after incident).

*Second*, allowing Uber to tell the jury it later reclassified the report as invalid will result in delay and confusion of the issues, by forcing the jury to sit through a "mini trial" on whether this

reclassification was reasonable and what Uber's motivation for the reclassification was. *See*

*Freeman v. Astrue,* 405 Fed. Appx. 148, 151 (9th Cir. 2010)(affirming trial court's exclusion of

evidence to avoid mini-trials on topics not germane); *Vasquez v. City of Long Beach*, 2016 WL

9114912, at *3 (C.D. Cal. April 19, 2016)(excluding evidence of other incidents).

Moreover, Uber's own expert Vida Thomas credited Jennifer's complaints regarding

driver Turay in order to form her expert opinions. *See* ECF 4357-3 at 14 (V. Thomas Expert

Report). Uber cannot rely on such evidence to form its expert opinions and then subsequently

seek to "reclassify" the facts.

Further, Uber never raised Jennifer's purported "support abuse" in the subject DFS or in

any discovery responses. Instead, Uber disclosed for the first time—at a Rule 30(b)(6)

deposition—that it had reclassified certain incidents involving Jennifer as "support abuse." Only

after that testimony did Uber begin producing documents that were even arguably responsive to

this issue. And those belated, cherry-picked productions are incomplete and unreliable. Jennifer

was an Uber rider for approximately three years, yet Uber has produced only a handful of records

covering a matter of weeks. *See* Luhana Decl. ¶3. This selective production severely prejudices

Plaintiff's ability to test Uber's newly asserted, post-incident justification. All told, this

incomplete and prejudicial evidence will serve no purpose but to confuse the jury on an irrelevant

issue.

**VII.    Plaintiff's Motion in Limine No. 7: Exclude Argument or Evidence Referencing Non-Material Amendments to Plaintiff Dean's Plaintiff Fact Sheet.**

Plaintiff moves to exclude argument or evidence referencing non-material amendments to

Plaintiff's Plaintiff Fact Sheet ("PFS"). Plaintiff timely submitted her PFS and thereafter served

six supplemental PFSs to comply with her ongoing duty to amend and correct under PTO No. 10

(ECF No. 348) and Fed. R. Civ. P. 26(e). These updates included: correcting biographical details

(date of birth); adding third-party witness contact information; updating the location and timing of

her assault; correcting the driver/assailant's name spelling; detailing additional descriptive facts;

acknowledging out-of-pocket costs; acknowledging relevant social media activity; and updating

employment information. The updates clarified or added additional information that was recalled

or obtained to supplement the initial PFS that was required to be produced within 30 days of filing a complaint.

Evidence that Plaintiff updated or corrected her PFS is irrelevant to any claim or defense. Simply amending discovery responses does not have "any tendency to make a fact [of consequence] more or less probable" under Rule 401. Moreover, even if such evidence had marginal relevance, any probative value is substantially outweighed by the dangers of unfair prejudice, jury confusion, and waste of time. Fed. R. Evid. 403.

Introducing PFS amendments invites the jury to make improper inferences about Plaintiff—namely, that she is inconsistent, unreliable, or untruthful—based solely on compliance with discovery obligations and to meet Court ordered compliance deadlines. This would not only create a distracting and time-consuming mini trial over the reasons for corrections or supplements (none of which are relevant) but also constitute inadmissible character evidence under Rule 404. Such evidence or argument should be excluded. *See, e.g., Aumand v. Dartmouth Hitchcock Med. Ctr.*, 611 F. Supp. 2d 78, 84–85 (D.N.H. 2009)("evidence that a pleading was amended should generally be excluded under Rule 403, at least if offered to impeach the pleader's credibility.").

VIII.    **Plaintiff's Motion in Limine No. 8:** Exclude Untimely or Non-Produced Evidence.

Plaintiff moves to exclude any evidence that Uber belatedly produced or has not produced. Specifically, as to belatedly produced documents, the deadline for Uber to produce documents about its operations passed on May 16 and the deadline to complete case-specific discovery for Wave 1 passed on November 14. (ECF 2924, 4123). Yet on December 3, Uber produced a spreadsheet of training courses Uber purportedly sent to driver Turay prior to the sexual assault. *See* Luhana Decl. at ¶ 4. And on December 4, Uber produced a declaration from Todd Gaddis regarding entries in Turay's mobile event log and claiming that Plaintiff's trip was not audio-recorded (the record otherwise indicates that the ride *was* recorded, but that Uber deleted the recording or allowed it to be deleted). *See* ECF 4656-3. Days later, Uber indicated on its initial witness list that it intends for Mr. Gaddis to testify live that Dean's trip was not recorded.

Uber has given no explanation for its failure to timely produce this purported evidence

1    regarding the recording of Plaintiff's trip. And these late-produced documents contradict timely-

2    produced evidence on which Plaintiff has justifiably relied in developing her case. Indeed, Uber's

3    own expert Vida Thomas states in her rebuttal expert report that the ride *was* recorded. *See*

4    10/24/25 V. Thomas Rebuttal Report at 7, Ex. 6. To upend the evidentiary record at this point,

5    with trial just weeks away, is unfair and constitutes exactly the kind of trial by surprise that this

6    Court has warned against. *See, e.g.*, *Jones v. Travelers Cas. Ins. Co. of Am.*, 304 F.R.D 677, 683

7    (N.D. Cal. 2015)(striking spreadsheets defendant produced three weeks after close of discovery

8    because spreadsheets contradicted defendant's prior representations and late production

9    prejudiced plaintiff by precluding discovery on the alleged facts in the spreadsheets).

10        Specifically, Turay's mobile event log, produced May 15, indicates the following code for

11    Dean's trip: ███████████████████████████████ Uber defines that code as:

12    ████████████████████████████████████████████

13    UBER_JCCP_MDL_003348796, Ex. 7. Uber's June 12 interrogatory responses, signed under

14    oath, likewise state that this code means: ████████████████████████ Greg

15    Brown, the 30(b)(6) witness Uber offered to address "audio recordings that captured any part of

16    the [Dean] Incident or Subject Ride," testified on July 15 that it was his understanding that the

17    presence of this code on Turay's mobile event log meant that ████████████████. *See*

18    7/15/25 Dep. of G. Brown at 229:11-17, Ex. 8. But neither he nor anyone else at Uber had

19    investigated whether the trip was recorded or a recording exists, despite Plaintiffs' email three

20    days earlier, noting "[t]here is a reference in Dean's mobile events log to

21    ████████████████████████████ which per the glossary means ███

22    ████████████████ This has NOT been produced." *Id*. at 229:18-2; Ex. 1831 to 8/6/25

23    Dep. of J. Brown at Tab 3, Ex. 9. Although Brown "put[] it on [his] follow-up list," the time for

24    that follow-up passed. 7/15/25 Dep. of G. Brown 230:13-17, Ex. 8.

25        Uber—just yesterday—offered to make Mr. Gaddis available for deposition. That is far

26    too little, far too late. Plaintiff does not have Mr. Gaddis's custodial file nor any document

27    productions, interrogatories, or other written discovery related to the issues addressed in his

28    declaration. All of that discovery, and likely more, would be required to give Plaintiff a fair

1  chance to understand this issue. If Uber wanted to inject this issue into the trial, it should have

2  done so months ago. That opportunity has passed.

3      Uber also designated Brown to testify about "[a]ll training Uber required [Turay] take at

4  any time," in response to a 30(b)(6) notice that requested he bring all documents relied on for his

5  testimony. Yet as with his testimony about audio recording, Brown was not able to point to any

6  specific trainings Uber required Turay to take nor did Brown indicate that Uber maintained a log

7  of Turay's trainings. *See* 7/15/25 Dep. of G. Brown at 26:10-28:8. Moreover, Uber should have

8  produced this document in response to Plaintiffs' March 26 discovery requests, which sought

9  "materials reflecting training Uber required the Subject Driver to take at any time." *See* Pl Dean's

10  3/26/25 Fist Set of Doc Reqs, No. 17, Ex. 10.[5] But it failed to do so.

11      Separately, in addition to the above, Uber has *never* produced documents or discovery

12  related to sexual assault/misconduct rates from 2025, despite Plaintiffs seeking data on such rates

13  (and Uber's duty to supplement discovery responses). *See* 2/28/24 Pls' First Set of Doc. Reqs.,

14  No. 73, Ex. 11. To the extent Uber intends to offer evidence or reference 2025 sexual

15  assault/misconduct rates on Uber's platform, it should be precluded from doing so as Plaintiff has

16  no basis to challenge whatever assertions Uber might try to make about these rates at trial.

17  **IX.     Plaintiffs' Motion in Limine No. 9:** Exclude Argument or Evidence Regarding
18  Contingency Fees, Attorney Advertising, or "Attorney-Driven" Litigation.

19      Plaintiff moves to exclude any evidence, testimony, or argument concerning (1)

20  contingency-fee arrangements or how Plaintiff's counsel are compensated; (2) attorney

21  advertising, including any suggestion that Plaintiff or others retained counsel after seeing such

22

23

24

---

[5] Additionally, Plaintiff's 30(b)(6) Deposition Notice specifically asked for testimony regarding
25  "All training Uber required the Subject Driver take at any time." *See* 7/9/25 Brown Dep. Notice,
Topic 7(c), Ex. 12. During Greg Brown's 30(b)(6) deposition, he testified as Uber's corporate
26  representative that he could not point to a specific communication where Uber told Mr. Turay that
intoxicated riders might not be able to articulate consent and further testified he was not
27  intimately familiar with the training materials from Ubers educational content. *See* 7/15/25 Dep.
of Greg Brown at 26:10-28:8, Ex. 8.
28

advertising; (3) assertions that this litigation is "attorney-driven" or "lawyer-manufactured"; or (4) any similar statements impugning Plaintiff's counsel or their motives.[6]

How Plaintiff's counsel are compensated, or how Plaintiff selected her attorneys, has no relevance to any issue in this case. Such information does not make any relevant fact more or less probable. References to contingency fees or attorney advertising would serve only to inflame the jury, invite bias against Plaintiff's counsel, and divert attention from the merits of the case. Indeed, Uber's counsel sought to subpoena Plaintiffs' counsel for information on third-party funding (subpoenas that Judge Cisneros quashed), raising the likelihood that Uber plans to raise these issues at trial. *See* ECF Nos. 3250, 3252, 3253, 3255, 3257, 3258, 3259, 3262, 3263. Such issues are irrelevant.

And even if such evidence had some marginal relevance, its probative value is far outweighed by the substantial risk of unfair prejudice, confusion, and delay. Suggesting that counsel are motivated by financial gain or that the litigation was "manufactured" through advertising improperly invites jury decision on an improper basis. Arguments concerning contingency-fee arrangements or advertising improperly appeal to bias and sympathy rather than reason. Judge Schulman excluded Uber from making such arguments in the JCCP bellwether case. *See* Ex. 1. And courts consistently preclude defendants from making such arguments. *See In re Ford Motor Co. DPS6 Prods. Liab. Litig.*, 2019 WL 7171542, at *1 (C.D. Cal. Oct. 31, 2019) (excluding attorney driven litigation arguments, holding that its "probative value is slim at best" and would distract and prejudice the jury); *In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 2095829, at *5 (D. Az. May 3, 2018)(excluding references to attorneys' fee agreement and attorney advertising); *Rivera v. Ford Motor Co.*, 2020 WL 4001914, at *2 (C.D. Cal. Mar. 12,

---

[6] Uber's counsel Allison Brown and her partners have made such arguments to juries in other cases. *See, e.g.*, Trial Tr., *Henry v. Brenntag N. Am., Inc., et al*., No. MID-1784-17 (N.J. Super. Ct. Law Div. Middlesex Cnty. Oct. 10, 2018), 2781:9-14, 2782:10-2783:20, 2796:9-12, 2804:9-12 (Oct. 10, 2018)(closing argument)("money machine, the plaintiffs' lawyers and their highly paid $30 million expert, they ran out of people to sue . . . [] [Plaintiffs' attorneys] say anything for money. [] They ran out of other people to sue. You heard them talk about other lawsuits. 1-800 call, we'll sue."), Ex. 13; Trial Tr., *Cadagin v. Johnson & Johnson*, No. 1522-CC00419-02 (Mo. Cir. Ct. City of St. Louis July 13, 2021), 428:14-429:5 (opening argument)("A lot of prospective jurors [] told us that, you know, they had seen so much attorney advertising [].") , Ex. 14.

2020)(excluding argument regarding attorneys' fees, attorney advertisements, or "attorney-driven" litigation as irrelevant and unfairly prejudicial); *Rodriguez v. Google LLC*, 2025 WL 2237720, at *2 (N.D. Cal. Aug. 6, 2025)("The intricacies of how this litigation evolved are not important to the jury; what matters is the evidence relevant to disputed, material issues of fact. [] Given the limited relevance of firm finances, Google would do well to steer clear of examining Plaintiffs' counsel's role in the case [].").

### X.     **Plaintiff's Motion in Limine No. 10:** Exclude Argument or Evidence Concerning the Personal Use of Uber by Counsel, Witnesses, or Their Family or Friends.

Plaintiff moves to exclude any evidence, testimony, or argument concerning the personal use of Uber by counsel, witnesses, or their family or friends. Multiple Uber witnesses discussed their personal and family use of Uber during depositions.[7] In response, Plaintiffs sought discovery on such personal and family Uber use. *See* Uber's Objs to Pls' 3rd Set of Rogs and Doc Reqs., Exs. 15, 16. Uber objected and refused to produce responsive discovery. *Id.*

Any reference to the personal use of Uber or rideshare services by counsel or witnesses (including expert witnesses) has no relevance to the issues in this case. Whether an individual (especially an Uber employee) personally chooses to use Uber says nothing about Uber's safety policies, practices, or the foreseeability of assaults. Personal anecdotes do not constitute evidence of safety or risk. Such testimony, which improperly infers safety, should be excluded as irrelevant, speculative, and unduly prejudicial under Fed. R. Evid, 401-403. *See, e.g., In re: Tylenol (Acetaminophen) Marketing*, 2016 WL 3125428, at *4 (E.D. Pa. June 3, 2016) ("[t]estimony by employees of the defendants about whether they personally take Tylenol is of little relevance to this case. However, the prejudice that such testimony may cause substantially outweighs any probative value it may have."); *In re Yasmin*, 09-cv-10012 (09-md-2100-DRH-MDL 2100), Doc. No. 262 at 61-62 (Phila. Ct. Cmn. Pleas., Mass Torts Div. Dec. 22, 2011) (excluding testimony by Bayer employees that they took Yaz because testimony was irrelevant

---

[7] *See, e.g.*, 4/29/25 Dep. of Henry Fuldner at 661:11-25, Ex. 17 ("Q. Do you use Uber as a rider yourself? A. Yes, absolutely. Q. Do you feel safe doing that? A. Yes. Q. Does your family use Uber, as well? A. Yep. Q. Any concerns with putting your family members in an Uber? A. None at all."); 5/28/25 Dep. of Sachin Kansal at 421:19-422:3, Ex. 18; 2/26/25 Dep. of Meghan Joyce at 63:4-8, Ex. 19.

and/or any probative value would be substantially outweighed by the prejudice of hearing employees who were loyal to the company offer benefits); *McCarrell v. Hoffman-LaRoche, Inc. and Roche Labs., Inc*., ATL-L-1951-03-MT, (N.J. Law Div. Apr. 17, 2007)(excluding evidence that witnesses, experts, or plaintiff's family/friends personally used Accutane because would be "more prejudicial than probative").

And even if the Court were to find some marginal relevance, it is substantially outweighed by the danger of undue prejudice because Uber refused to produce discovery related to their witnesses' and families' Uber use. If Uber's witnesses testify that their family members use Uber, Plaintiff is entitled to test, for example, whether those family members avoid the service at night, or alone, or when under the influence of alcohol. Plaintiff would also be entitled to learn whether Uber employees or executives use higher-end Uber services (such as Uber Black) or if the system is designed to dispatch employees or executives only highly rated drivers. Yet Uber refused to produce the data necessary for fair discovery on this issue. Uber cannot refuse to produce responsive discovery yet still use such anecdotes to its advantage at trial. *See R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012)(under Rule 37(c)(1), party that failed to disclose evidence during discovery has burden to show its failure was substantially justified or is harmless in order to use evidence at trial).

Permitting Uber to argue or elicit testimony about personal rideshare use would also improperly conflate individual preference with corporate responsibility. It also risks reinforcing jurors' own familiarity or experiences with Uber, thereby biasing their evaluation of the evidence. Whether Uber's executives, counsel, or witnesses personally use Uber is not probative of whether Uber exercised reasonable care in preventing sexual assaults. Such testimony should be excluded.

## XI.    <u>Plaintiff's Motion in Limine No. 11:</u> Exclude Argument or Evidence That Uber Was Legally Prohibited or Constrained From Implementing Safety Measures.

The Court should preclude Uber from introducing any evidence, testimony, or argument suggesting that it was legally prohibited or otherwise constrained by legal considerations from implementing effective safety measures—including dashcams, a woman-to-woman matching option, or risk-based dispatch. *See*, *e.g.*, ECF 4356 (Uber MSJ) at 13-14 (arguing that legal risk

1    drove decision to delay development of W2W). Uber has withheld over 110,000 documents in

2    whole or in part on the basis of attorney-client and work-product privileges, including

3    communications and documents bearing directly on its alleged "legal considerations" behind

4    refusals to adopt safety measures. Having refused to disclose the advice it purportedly relied

5    upon, Uber cannot now argue at trial that its inaction was justified by legal prohibitions or

6    counsel's advice based on the very evidence it refused to produce.

7          A party cannot use privilege as both a sword and a shield. *See Kaiser Found. Health Plan,*

8    *Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1042 (9th Cir. 2009). In practical terms, "this means

9    that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot

10   adequately dispute unless it has access to the privileged materials." *Bittaker v. Woodford*, 331

11   F.3d 715, 719 (9th Cir. 2003)(en banc)(citation omitted). "Where a party raises a claim which in

12   fairness requires disclosure of the protected communication, the privilege may be implicitly

13   waived." *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc*., 259 F.3d

14   1186, 1196 (9th Cir. 2001) (quoting *Chevron Corp. v. Pennzoil Co*., 974 F.2d 1156, 1162 (9th

15   Cir.1992)). A "[d]efendant may testify as to attorney-client communications and their effect on

16   [d]efendant's mental processes only to the extent that evidence of those communications was

17   made fully available to [p]laintiffs through depositions or other discovery." *Id*. (citing *Madrigal

18   v. Allstate Indem. Co*., 2015 WL 12748277, at *9 (C.D. Cal. Nov. 5, 2015)).

19         Uber's most recent privilege log spans 110,298 entries (Luhana Decl. ¶ 5), and Uber

20   withheld numerous communications and documents related to specific safety measures based on

21   these privilege assertions.[8] And Uber's counsel invoked privilege repeatedly at depositions to

22   _____

23   [8] For example, approximately 3,715 entries contain the phrase "cameras or recording devices in
     vehicles" and approximately 775 entries relate to S-RAD or Safe Dispatch. *See* Luhana Decl. ¶ 6;

24   *see also* Master Privilege Determinations for Custodians Sullivan, Fuldner, and Cinelli (Mar. 17,
     2024) (upholding privilege over documents regarding video-safety devices), Ex. 20; Master

25   Privilege Determinations for Custodian McDonald (Apr. 2, 2025)(upholding privilege over
     Women Safety Data documents), Ex. 21; Master Privilege Determinations for Privilege Logs

26   Issued Before March 3, 2025 ("Attachment B"), Part 1 (Nov. 10, 2025)(upholding privilege over
     dash-cam and in-app video-recording materials), Ex. 22; Master Privilege Determinations for

27   Privilege Logs Issued Before March 3, 2025 ("Attachment B"), Part 3 (Dec. 4, 2025)(upholding
     privilege over dash-cam materials), Ex. 23; UBER_JCCP_MDL_005239726,

28

prevent witnesses from testifying about legal advice that supposedly constrained Uber from implementing these safety measures.[9] Uber cannot conceal such information from discovery and then rely upon it at trial. By concealing its internal legal analysis, Uber has deprived Plaintiff of the ability to test its claimed rationale.

The recent decision in *In re Xyrem Antitrust Litig*., 2025 WL 860505, at *4-6 (N.D. Cal. Mar. 19, 2025) is instructive. There, the court precluded defendants from introducing evidence at trial about topics defendants asserted privilege over unless defendants waived privilege and immediately produced the discovery. *Id*. The court further added, while non-privileged evidence was available on the topic, "in order to test the veracity of [a] belief.... other justifications that plaintiffs have shown relied on attorney-client advice are also directly implicated. In other words, Defendants are essentially saying 'Trust us. []' To rebut such assertions, Plaintiffs must, in all fairness, be given access to contemporaneous information regarding those topics that necessarily implicate attorney-client advice." *Id*. (citation and quotations omitted).[10]

---

UBER_JCCP_MDL_005354493, UBER_JCCP_MDL_003272500, Ex. 24 (documents related to women rider matching redacted for privilege).

[9] *See*, *e.g.*, 8/28/25 30(b)(6) Dep. of Mariana Esteves at 329:12-330:13, Ex. 25 (privilege objection regarding video cameras: Q. [] what is the law that says that Uber cannot have a dashcam that -- or a video recording service that automatically uploads to Uber in an encrypted form for review in case of a safety incident? What law in particular are you telling -- are you talking about? Uber Counsel: Objection, and counsel the witness not to discuss attorney-client privileged communications. Witness: Yeah, to answer that, I would need to go into conversations with the lawyers."); *id*. at 331:21-332:25 (privilege objection regarding video cameras); *id*. at 278:19-279:15 (privilege objection regarding fingerprinting drivers)*;* 7/23/25 Dep. of Hannah Nilles at 39:25-41:9, Ex. 26 (instructing witness not to answer questions on safety issues based on privilege); 3/27/25 Dep. of Andi Pimentel at 383:3-16, Ex. 27 (instructing witness not to answer questions on video recording based on privilege).

[10] *See also Shenwick v. Twitter, Inc*., 2021 WL 1232451, at *4 (N.D. Cal. Mar. 31, 2021) ("Having withheld documents on the subjects of its public statements on the grounds of privilege, fairness dictates that Defendants not be able to introduce evidence implying that its lawyers passed on the adequacy of Defendants' communications."); *In re Lidoderm Antitrust Litig*., 2016 WL 4191612, at *5 (N.D. Cal. 2016)("it would be unfair to not allow [P]laintiffs access to [D]efendants' contemporaneous attorney-client information to test the veracity of the [D]efendants' justifications in this litigation even though that belief is based in part on business judgment and executive experience."); *Rawcar Grp., LLC v. Grace Med., Inc*., 2014 WL 12199979, at *1 (S.D. Cal. Oct. 21, 2014)(granting MIL where defendants affirmatively blocked discovery based on advice of counsel).

Likewise, Uber should be prohibited from arguing or insinuating that it cannot be held liable under the common law negligence principles because its practices (purportedly) satisfy certain minimum regulatory or administrative requirements.

## XII. Plaintiff's Motion in Limine No. 12: Exclude Argument or Evidence of Non-Profit Endorsements of Uber's Safety Data or Policies Related to Sexual Assault.

Plaintiff moves to exclude argument or evidence of non-profit endorsements of Uber's safety data or policies related to sexual assault. Such evidence is both hearsay and undisclosed expert testimony.

Uber paid groups such as RAINN, RALIANCE, CALCASA, NO MORE, the National Network to End Domestic Violence, and others. *See* ECF 4393 (Drumwright Supp. Rpt.) at ¶¶ 5-12. Those groups then publicly praised Uber's alleged transparency and commitment to addressing sexual assault and domestic violence and partnered with Uber on educational initiatives. Plaintiff's expert Dr. Drumwright explains how Uber viewed these arrangements as "quid pro quo" and was able to, for example, ghostwrite non-profit statements supporting Uber. *Id.* at ¶¶ 5, 39-57. Uber even ███████████████████████████████████ ████████████████████████████████████████████████ ██████.[11] So these claimed partnerships were nothing more than an illusory and misleading attempt to add an aura of safety and credibility with women riders.

Plaintiff anticipates Uber will introduce evidence and testimony that Uber's purported safety efforts—including its U.S. Safety Reports—were endorsed by various non-profit groups. For example, during the JCCP bellwether trial, Uber alluded repeatedly to non-profit endorsements of its safety data or policies related to sexual assault. *See, e.g.*, Uber's Opening, pg. 79, Ex. 28 ("We partnered with many nonprofit organizations who exist only to try and solve this problem; for example, the National Sexual Violence Resource Center, or NSVRC. We partnered with these organizations and we said, Help us."); Uber's Closing, *Id.* at pg. 3143-44. And Kate

---

[11] *See* UBER_JCCP_MDL_000911254, Ex. 29, Boman Ex. 2041, Ex. 30, Boman Dep., at 133-137, Ex. 31; *see also* UBER000231789, Ex. 32 ("These funds should be an ongoing consistent commitment Uber makes, in part, because these partnerships are essential. Women's safety issues pose a significant risk to the business, not only in reputation, but consumer preference and regulatory impact."); ECF 4393 (Drumwright Supp. Rpt.) at ¶¶ 5-38.

1  Parker, Uber's Global Director of Product Marketing, Brand Management, testified: "There were

2  particular media components that our experts [non-profits] wanted to be able to provide insights. I

3  think one of the things that our experts [non-profits] struggled with was this characterization that

4  sexual violence or sexual harassment is an Uber problem, because our experts believe sexual

5  harassment and sexual violence is a societal problem." *Id.* at 1007:9-15. Parker also testified:

6  "Many of these folks would say [] even before the report came out […] This is incredible that you

7  are going to do this. I think the term 'unprecedented' [] was the tone of the conversation." *Id.* at

8  1134:19-1135:10.

9      Any non-profit "endorsement" about Uber's safety data or safety record or policies

10  relating to sexual assault should be excluded as inadmissible hearsay because it is an out-of-court

11  statement that Uber would necessarily offer for its truth—i.e., to prove the sincerity of Uber's

12  safety and transparency efforts and that the Safety Reports are an accurate reflection of the risk of

13  using Uber. *See* Ex. 28 at 79 ("you1re going to get to see information in the safety report that

14  calls it unprecedented; an unprecedented bold move to release this kind of data."). Fed. R. Evid.

15  801(c), 802. These non-profits were not deposed and don't appear on Uber's witness disclosures.

16  Their out-of-court statements are classic hearsay, and no exception applies. Admission would also

17  create a substantial risk of unfair prejudice and jury confusion because Uber explicitly presents

18  these non-profits as "experts," circumventing the safeguards for expert or opinion evidence and

19  inflating the perceived reliability of Uber's position. *See* Fed. R. Evid. 403, 702.

20  **XIII.    <u>Plaintiff's Motion in Limine No. 13:</u> Exclude Argument or Testimony Regarding
21  "Low" or "Rare" Prevalence of Sexual Violence on Uber's Platform Compared to
       Society in General or Other Forms of Transportation or Other Irrelevant.
22      Scenarios.**

23      Plaintiff moves to exclude any argument, testimony, or evidence suggesting that (1) the

24  rate of sexual violence on Uber's platform is "low," "rare," or "statistically insignificant"; (2)

25  sexual violence is merely a "societal problem"; or (3) Uber is safer than other forms of

26  transportation, "society in general," or other irrelevant comparators. Such claims are speculative,

27  irrelevant, unduly prejudicial, unsupported by competent data, and lack evidentiary foundation.

28  They rest on conjecture and unverifiable comparisons rather than any empirical analysis.

1    Uber attempts to compare its safety record to that of society in general. For example,

2  when asked about the ongoing sexual violence problem on Uber, Mike Akamine stated that "there

3  are ongoing societal problems" and suggested that Uber is solving "a problem that exists in

4  society." *See* 5/20/25 Akamine Dep. at 426:17–427:21, Ex. 33. He further claimed the risks of

5  sexual violence on Uber "are common to sexual assault in society." *Id*. at 444:24–445:17.

6  Similarly, numerous other Uber witnesses have dismissed the significance of Uber's own reported

7  numbers by characterizing the "rate" of sexual violence as "low" or "rare" based solely on Uber's

8  total ride volume. *See, e.g.*, 2/14/25 K. Parker Dep. at 656:6–7 (sexual violence is "very rare on

9  the Uber platform," "sexual assaults were incredibly rare on the Uber platform. Uber did upwards

10  of billions of trips."), Ex. 34; 4/16/25 Wong Dep. at 126:9–10, 161:20–22 ("reports of sexual

11  assaults . . . are extremely rare on the [Uber] platform. [] Reports of sexual assaults under the

12  platform is extremely rare. We're talking about one in a million."), Ex. 35.[12] But these witnesses

13  rely on speculation rather than analysis. Uber admits it lacks the evidence necessary to support

14  such statements. *See* 4/2/25 R. Payne Dep. at 253:17–254:19, Ex. 36 ("I think the rest of society

15  would have to release numbers of the numbers of kind of sexual assaults and incident rate in order

16  for us to compare.  I think there are general numbers that I've seen, but I don't exactly know how

17  they compare."). And Uber's claim that sexual violence is "rare" is also misleading because Uber

18  bases this on dividing reported incidents by the total number of completed U.S. rides. *See* 4/24/25

19  McDonald Dep. at 122:12–19, 123:22–124:8, Ex. 37. Indeed, Uber's own internal documents

20  show Uber knows that not all rides share the same risk profile. *See*

21  UBER_JCCP_MDL_001687315, Ex. 38. Thus, even assuming such comparisons were relevant

22  (they are not), the correct denominator would be the number of high-risk rides, including rides

23  involving opposite-gender pairings, late-night or early-morning rides, weekend rides, rides near

24

25

---

26  [12] *See also* 5/29/25 Nilles Dep. at 574:12–15 ("From a statistical standpoint, it's exceptionally
   rare. .0002 percent of all trips may end in a safety incident. 99.9998 end without any safety
27  incident." "I would consider any report of sexual assault to be exceedingly statistically rare."),
   Ex. 39; 6/30/25 Nilles Dep. at 61:9–11 ("So the way we think about it internally and the way we
28  talk about it, is, first -- and I already said this --statistically, these are very, very rare
   occurrences."), Ex. 40.

bars, rides involving intoxicated passengers, rides with low-rated or previously flagged drivers, ███████████████, and other factors identified by Uber itself.

From 2017 through 2024, Uber received approximately 558,918 sexual violence reports in the United States—an average of 191 reports per day over eight years. *See* ECF 4338-1, Keller Rpt. at 8-9. Yet, despite possessing vast internal data, Uber has not conducted or disclosed any credible statistical analysis capable of establishing that these incidents are "rare." Roger Kaiser testified that Uber has not attempted to determine the rate of sexual violence incidents involving female passengers. *See* 11/19/24 Kaiser Dep. at 50:5–18. Ex.41. And Uber corporate representative Todd Gaddis confirmed that despite having the capability to calculate rates for specific windows (e.g., 10 p.m.–4 a.m., or weekends), Uber has not done so or disclosed such information. *See* 7/8/25 Gaddis Dep. at 63:6–16, Ex. 42. So Uber cannot credibly state that sexual violence is "rare" or "low" when it has not conducted the analyses necessary to establish those assertions. Such speculation, unsupported by any proper foundation, is prohibited by both Fed. R. Evid. 701 and 602. *See U.S. v. Holguin*, 51 F.4th 841, 865 (9th Cir. 2022)(under Rule 701, a witness "may not 'testify based on speculation, rely on hearsay, or interpret unambiguous, clear statements.'") (citation omitted); *id*. (lay opinion testimony is admissible only if a foundation is laid indicating that the opinion was "rationally based on the witness's perception."); Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

Moreover, whether sexual violence is a "societal problem" or whether Uber is "safer than average" has no bearing on any questions before the jury. Plaintiff does not need to prove that Uber is less safe than other transportation options or than "society" at large. Permitting Uber to introduce these assertions would invite a "mini-trial" on disputed social science, epidemiology, denominators, base rates, and statistical methodology—all far afield from the issues the jury must decide. The resulting confusion and prejudice substantially outweigh any minimal probative value. The Court in the Lyft JCCP excluded similar arguments related to sexual assault and society at large. *See In re Lyft Rideshare Cases*, JCCP, Superior Court, Case No. CJC-20-005061, at 8-9 (Sept. 12, 2025), Ex. 43. This Court should follow suit.

1

2

**XIV.**      **Plaintiff's Motion in Limine No. 14:** Exclude Argument or Evidence that Uber has Helped Reduce Drunk Driving Rates.

3      Plaintiff moves to exclude any argument or evidence that Uber has helped reduce drunk

4   driving rates or any similar claim. Such assertions are irrelevant to the issues in this case, lack

5   evidentiary foundation, and risk improperly influencing the jury with speculative "public safety"

6   narratives that have no bearing on Uber's duty to protect passengers from sexual assault. *See* Fed.

7   R. Evid. 401-403.

8      Uber witnesses have testified that they believe Uber reduces drunk driving.[13] But their

9   testimony rests on anecdote, assumption, and unsupported claims—not data. *See* 2/7/25

10  Hourdajian Dep. at 154:8–16 ("I remember that I/we had a lot of passion and conviction to begin

11  with anecdotal data, anecdotal information, stories of people being able to use Uber in lieu of

12  drunk driving."), Ex. 44. Uber's own internal documents confirm these claims are pure

13  speculation: "[p]ositive reactions [] must have had an impact on reducing DD [drunk driving]

14  incidents (though it is very hard/impossible to quantify)." *See* UBER_JCCP_MDL_004910959,

15  Ex. 45.[14] So Uber's own internal materials undermine the notion that it has reduced drunk

16  driving—precisely the type of speculation that risks misleading jurors and distracting them from

17  the core issues in dispute.

18      Such evidence, even if it were non-speculative, is irrelevant. Whether Uber reduces drunk

19  driving has nothing to do about whether it is responsible for the injuries to Jaylynn Dean. There is

20  no evidence she was going to drive herself instead of using Uber on the night in question—she

21  was in Arizona only temporarily, living at a hotel, at the time.

22      Evidence of Uber's effect on drunk driving is also unduly prejudicial and must be

23  excluded under Rule 403. Permitting Uber to frame itself as providing "public-safety benefits" or

24

25  [13] *See, e,.g*., 6/5/25 Childs Dep. at 48:5–22 ("Uber is proven to be a safer way to get home, in a drunk driving episode."), Ex. 46; 10/21/24 Stevenson Dep. at 231:9–232:24 ("lots of studies [day]

26  that Uber is significantly reduced accidents and fatalities associated with drunk driving []"), Ex. 47.

27

28  [14] A 2022 Uber presentation showed that fatalities in alcohol-related driving crashes have actually risen since Uber began operations. *See* UBER_JCCP_MDL_004842329 (Ross Ex. 1074), Ex. 48.

"good acts" would improperly invite the jury to weigh perceived societal benefits—such as reduced drunk driving—against Uber's legal obligation to act reasonably to protect passengers from foreseeable assaults. That is not the law. *See Gomez v. Am. Med. Sys. Inc*., 2021 WL 12313068, at *9 (D. Az. June 17, 2021)(excluding corporate defendant's good acts or reputation as inadmissible, irrelevant, and "substantially more prejudicial than probative."). The Court in the Lyft JCCP excluded evidence or argument that "Lyft reduces drinking and driving." *See In re Lyft Rideshare Cases*, JCCP, Superior Court, Case No. CJC-20-005061, at 8-9 (Sept. 12, 2025), Ex. 43. This Court should do the same.

## XV.    Plaintiff's Motion in Limine No. 15: Exclude Argument or Evidence that Uber Drivers Are Safer Drivers than the Average Driver.

Plaintiff moves to exclude any evidence or argument that Uber drivers are safer drivers than the average driver. Uber should not be permitted to argue that Uber drivers are safer than average because such assertions are irrelevant, minimally probative (if at all), and highly misleading. Plaintiff anticipates that Uber will introduce evidence claiming its reported accident rate is low—approximately "1.01 accidents per million miles driven" (UBER_JCCP_MDL_004647390, Ex. 49) and that its motor vehicle fatality rate ("0.58 per 100 million VMT") is roughly half the national rate ("1.84 per 100 million VMT"). *See* UBER_JCCP_MDL_005549945; Ex. 50, UBER_JCCP_MDL_000562747, Ex. 51.[15] And Plaintiff expects Uber to rely on research from the Boston-based Aite Group, which allegedly concluded that ridesharing drivers are "generally safer behind the wheel than the average American driver." *See* UBER_JCCP_MDL_001636569, Ex. 52; UBER_JCCP_MDL_005207782, Ex. 53.

None of this evidence is relevant to whether Uber adequately addressed the known risks of sexual violence on its platform. Accident rates, speeding frequency, cellphone use, and motor vehicle fatality statistics have no bearing on Uber's knowledge of, response to, or responsibility

---

[15] Plaintiff further anticipates Uber will introduce data purporting to show that ridesharing drivers speed less frequently ("30% of trips involve speeding compared to 41% for average drivers"). *See* UBER_JCCP_MDL_005207788, Ex. 54; UBER_JCCP_MDL_001636569, Ex. 52. Uber may also argue that its drivers use their phones less while driving ("23 seconds per 15 minutes versus 35 seconds for non-Uber divers"). *See* UBER_JCCP_MDL_005207788, Ex. 54.

for preventing sexual assault. Allowing Uber to introduce this material would transform the trial into a misleading comparison of driving safety, inviting improper inferences and confusing the jury about the issues at stake. The risk of undue prejudice and juror distraction far outweighs any marginal probative value.

## XVI.    Plaintiff's Motion in Limine No. 16: Exclude Argument or Evidence that Uber Drivers Prefer the Independent Contractor Model.

Plaintiff moves to exclude any evidence or argument that Uber drivers prefer the independent contractor model. Such assertions are irrelevant, minimally probative, and highly prejudicial. Plaintiff anticipates that Uber will attempt to introduce evidence suggesting that its drivers report a preference for remaining independent contractors rather than being classified as employees.[16] Plaintiff further anticipates that Uber may attempt to introduce testimony suggesting that if drivers were reclassified as employees, many would stop driving for Uber altogether. *See* QS_0000055, Ex. 55.

None of this is relevant to the issues in this case. Driver preferences about employment classification have no bearing on whether Uber negligently failed to address the risk of sexual violence on its platform, nor the extent to which Uber controls its drivers. *See O'Connor v. Uber Techs, Inc.*, 82 F. Supp. 3d 1133, 1152 (N.D. Cal. 2015)(explaining that freedom or flexibility "does not in itself preclude a finding of an employment relationship"). The more relevant inquiry is how much control Uber has over its drivers *while they are on duty* for Uber. The fact that some drivers are only on-duty irregularly says little about the level of control Uber can exercise over them when they *do* report to work. Allowing Uber to introduce such material would lead the jury to weigh perceived business or workforce consequences—matters wholly unrelated to Plaintiff's claims—against Uber's safety obligations. This would create undue prejudice, confuse the issues, and invite an improper "balance of interests" analysis that has no place in determining liability for sexual assault.

---

[16] According to Uber, drivers often report that being an "independent contractor" allows them to choose when, where, and how they work—characterizing this flexibility as a central advantage of the model. *See* UBER_JCCP_MDL_005154815, Ex. 56 ; UBER_JCCP_MDL_003255312, Ex. 57; UBER_JCCP_MDL_003359920, Ex. 58; UBER_JCCP_MDL_005579342, Ex. 59; UBER_JCCP_MDL_002658984, Ex. 60.

**CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that the Court grant Plaintiffs' motions in limine as described herein.

Dated: December 16, 2025

Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267093)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
Roopal P. Luhana

**CHAFFIN LUHANA LLP**
600 Third Avenue, 12th Floor
New York, NY 10016
Telephone: (888) 480-1123
Facsimile: (888) 499-1123
luhana@chaffinluhana.com

*Co-Lead Counsel for Plaintiffs*

**FILER'S ATTESTATION**

I am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: December 16, 2025                    By:    */s/ Roopal Luhana*
                                                            Roopal Luhana