UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION<br><br>This Document Relates to:<br><br>*Jaylynn Dean v. Uber Techs., Inc.*,<br>N.D. Cal. Case No. 3:23-cv-06708-CRB<br>D. Ariz. Case No. 2:25-cv-04276-CRB | Case No. 3:23-md-03084-CRB (LJC)<br><br>**DECLARATION OF GREG BROWN**<br><br>Judge:        Hon. Charles R. Breyer<br>Courtroom:   6 – 17th Floor |

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

PHOENIX DIVISION

| | |
|---|---|
| JAYLYNN DEAN,<br><br>    Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., et al.,<br><br>    Defendants. | CASE NO. 25-cv-4276-PHX-CRB<br><br>Judge:        Hon. Charles R. Breyer<br><br>Courtroom:   501 |

I, Greg Brown, having personal knowledge of the following, state:

1. I am the Director, Head of Central Safety, at Uber. I was first employed by Uber from 2014 through 2020, during which time I worked as Operations and Logistics Manager (July 2014 – September 2015); Senior Operations Manager (September 2015 – November 2017); Program Lead, Safety (November 2017 – August 2019); and Senior Program Lead, Safety & Risk (August 2019 – December 2020). When I returned to Uber in 2022, I initially worked as Director of Safety, United States & Canada (September 2022 – August 2024). Since August 2024, I have served in my current role. In that role, I am responsible for overseeing, organizing, and implementing global risk programs, and ensuring, where applicable, that Uber's safety policies and standards are appropriately globalized. I offer this Declaration in the above-captioned matter in support of the Statement in Response to Plaintiff's Administrative Motion to Consider Whether Another Party's Material Should Be Sealed filed by Defendants Uber Technologies, Inc. and Rasier, LLC (collectively, "Uber"). The facts set forth herein are true and correct and are based on my own personal knowledge, and I could and would competently testify thereto if called to testify in this matter.

2. I have reviewed Exhibits 7-9 and 29-32 to Plaintiff's Omnibus Motions in Limine. I have also reviewed Uber's proposed redactions to these materials (the "Redacted Materials").

3. The Redacted Materials should be protected from disclosure to Uber's competitors because they reveal confidential information about Uber's specific technologies, processes, relationships and strategies. Specifically, the Redacted Materials divulge competitively sensitive details concerning Uber's audio recording and experimentation; information concerning Uber's proprietary investigation processes; and sensitive information about Uber's relationships with non-profit organizations. All of this information is unknown to Uber's competitors and would result in a competitive disadvantage to Uber if made publicly available. Uber has spent significant time and resources developing its proprietary technologies, processes, and strategies. Further information about the type of confidential and competitively sensitive information contained in the Redacted Materials is set forth below.

4. The confidential information sought to be redacted is only made available to internal Uber employees who need to know about, work from, analyze, or prepare the confidential information. It is not

generally available to any and all employees within Uber and is restricted based on document access procedures.

5. I am personally familiar with the confidential information through my work as it relates to overseeing, improving, and implementing global risk programs and Uber's safety policies and standards.

6. Disclosure of the nature and details of the confidential information outlined below, which Uber has not revealed publicly and has taken precautions to safeguard, would cause competitive harm to Uber by providing its competitors with internal information regarding some of the key components of Uber's operational strategies. Uber and its competitors participate in a highly competitive market. Information concerning Uber's technology, processes, and strategies is therefore of great interest to Uber's competitors in developing their own technology, processes, strategies, and could be leveraged against Uber to its competitive disadvantage.

7. In addition, disclosure of information concerning Uber's internal technologies, procedures, and strategies could potentially allow competitors to inappropriately co-opt and adopt the same, which could harm Uber's competitive standing. In other words, Uber's competitors could use the confidential information to alter or improve their own respective businesses, which, given Uber's efforts to safeguard the information, would severely diminish Uber's hard-earned competitive advantage.

8. Public disclosure of the redacted information would also reveal Uber's confidential safety-related goals and priorities to its competitors. Permitting Uber's competitors access to this competitively sensitive strategic information could harm Uber by allowing competitors to develop strategies and programs to counter initiatives that Uber is contemplating or working on.

9. Further, disclosure of information about the details of Uber's proprietary investigative procedures to the public may allow users of the Uber platform or other individuals to take steps to undermine or circumvent the effectiveness of these safety measures.

10. The proposed redactions, described in more detail below, are narrowly tailored to protect Uber's competitively sensitive information.

11. **Audio recording and experimentation.** Plaintiff's Opening MIL Exhibit 7 describes Uber experiments with the audio recording feature to ensure drivers don't mistakenly leave continuous recording on. It includes a technical discussion of exactly how this feature will be programmed and

implemented, as well as the analytic events being emitted for the experiment. Plaintiff's Opening MIL Exhibit 9 similarly references a confidential field tracked in Uber's systems and what it means. Publicly disclosing this information would provide Uber's competitors with the benefits of the insights of Uber's proprietary features and experiments without investing the same resources or efforts. Uber's competitors could use this information to develop strategies to counter, preempt, or differentiate themselves from Uber's initiatives and features.

12. **Investigation processes.** Plaintiff's Opening MIL Exhibit 8 consists of excerpts to my July 15, 2025 deposition. It includes a discussion of Uber's investigative processes, including certain non-public details about how investigations are conducted and the tools that Uber uses. Pl. MIL Ex. 8 at 229:2-10, 229:12-13, 229:18-22, 230:18-25. Unsealing these redactions would result in competitive harm to Uber because Uber's main competitors could replicate Uber's investigative processes, which Uber has invested significant human and financial capital to develop and operationalize. Moreover, revealing Uber's investigative processes to the public could allow third-party users of the Uber app to undermine and exploit Uber's methodologies for investigating incidents, compromising safety to the detriment of users and drivers.

13. **Uber's relationships with non-profit organizations.** Plaintiff's Opening MIL Exhibit 29 (and Exhibit 30, which is identical to Exhibit 29 except for the addition of a metadata page), is an internal Uber document that discusses Uber's strategies involving and relationships with non-profit organizations. UBER_JCCP_MDL_000911254, -911256-911260. It includes discussions of specific dollar amounts recommended to be granted to specific organizations, as well as an internal Uber assessment of the organizations. This same document is discussed and quoted in Plaintiff's Opening MIL Exhibit 31, consisting of excerpts of the deposition of Emilie Boman. Ex. 31 at 133:11-14, 134:24, 135:4-5, 135:8-12, 135:14-18, 135:21-22, 136:1-4, 136:9, 136:14, 136:17-22, 137:1-3, 137:6-9, 137:12-13, 137:16-23. Finally, Plaintiff's Opening MIL Exhibit 32 is the December 21 funding request for Uber's Driving Change initiative. UBER000231789-231792, 231795-231802. It includes an in-depth discussion of Uber's strategies involving and relationships with non-profit organizations, including specific dollar amounts requested. Publicizing this information would provide Uber's competitors with valuable confidential information about Uber's sensitive and confidential strategies in this area, which the

competitors could potentially leverage in competing with Uber and use in their own relationships with non-profits.

14. For all of these reasons, it is essential that the competitively sensitive information set forth herein be maintained under seal.

1  I declare under penalty of perjury under the laws of the United States of America that the foregoing
2  is true and correct.

3  Dated: January 6, 2026

/s/ *Gregory Brown*
GREG BROWN