1
2  [Submitting counsel below]
3
4
5                    UNITED STATES DISTRICT COURT
                   OF NORTHERN DISTRICT OF CALIFORNIA
6                        SAN FRANCISCO DIVISION
7

| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB |
|---|---|
|  | **PLAINTIFF'S TRIAL BRIEF RE: MEDIA-RELATED EVIDENCE** |
| This Document Relates to: | Judge: Honorable Charles R. Breyer <br> Ctrm.:  D. Ariz., 501 |
| *Jaylynn Dean v. Uber Techs., Inc.*, <br> N.D. Cal. No. 23-cv-06708 <br> D. Ariz. No. 25-cv-4276 | **REDACTED** |

15                    UNITED STATES DISTRICT COURT
16                         DISTRICT OF ARIZONA
                            PHOENIX DIVISION
17

| JAYLYNN DEAN, | No. 25-cv-4276-PHX-CRB |
|---|---|
| Plaintiff, | Judge:  Honorable Charles R. Breyer <br> Ctrm.:   501 |
| v. |  |
| UBER TECHNOLOGIES, INC., et al., |  |
| Defendants. |  |

# RESPONSE TO TRIAL BRIEF

At the pretrial conference, the Court indicated that evidence of Uber's response to media stories is admissible "to the extent it reflects a mindset or an attitude or an approach by the defendant to these types of allegations or … to the subject matter." 1/5/26 H'rg Tr. at 19:15-21. Uber assured the Court that "context" would dispel any relevance of certain Slack communications among Uber executives. The opposite is true. The full context confirms that the Court was right: the statements at issue are highly probative of Uber's mindset and approach to sexual assault in its vehicles. In particular, the statements illustrate the company's mindset at a crucial time—soon after Uber announced "a period of widespread change at Uber"[1] and right when Uber was about to partner with RAINN and release its first Safety Report, actions supposedly kicking off a new era of victim-focused practices at the company. The statements also go directly to the credibility of Uber's executives, including one who will testify live in this trial. And, as the Court suggested, the evidence may be accompanied by a limiting instruction.

## I. Background

On October 9, 2019, USA Today reported that Uber had, without notice or consent, sent victims' personal information to Crawford, a third-party claims company. Ex. A (article). The article contrasted Uber's information-sharing with Crawford with its refusal to share information with the police. The article highlighted how Crawford demanded non-disclosure agreements from victims. And, the article included personal stories of women and even their family members being contacted by Crawford in aggressive and misleading ways. *See id.* The story included comments from Uber executive Andrew Hasbun, who only a few months later was promoted to Director of Safety Communications. In particular, he defended Crawford's outreach to one victim as a response to the victim's request "for financial support for therapy." *Id.* at 5-6.

Internally, Uber recognized how damaging the story was, not because of how victims were treated, but because of how it would affect the company's reputation: "[REDACTED]

---

[1] Tony West, *Turning the lights on*, Uber (May 15, 2018), https://www.uber.com/newsroom/turning-the-lights-on/

1  ███████████████████████████████████████████████████
2  ███████" Ex. B at 2036671. Enter Mr. Hasbun. He ███
3  ████████████████████████████████████████ *Id.* at 2036670.
4      In another conversation, however, Mr. Hasbun was more introspective. Slacking with a
5  fellow communications executive (a senior manager), he ████████████████████████
6  ████████████████████████████████████████████████████
7  ██████████ Ex. C at 2096570. He complained that he "sold my soul" when he "trashed rape
8  victims to USA Today." *Id.* "Out of 3 [victims in the story], I trashed 2." *Id.* He "sliced their
9  credibility." *Id.* In particular, he █████████████████████████████████████
10 ████████████████████████████████████████████████████
11 █████████████████████████████████████ *Id.* And he derided Mr.
12 Fuldner, Uber's head of safety, as metaphorically having "the heads of various missing women" in
13 his "basement." *Id.*

14 **II.    Argument**

15      What makes these Slack messages so probative is not their tone, but their candor. Speaking
16 privately, Mr. Hasbun acknowledged that Uber's public response required him to undermine
17 victims' credibility to protect senior safety executives. This evidence is relevant in exactly the way
18 the Court foresaw: it shows Uber's mindset in responding to sexual assault allegations. It does so
19 in the most candid, least sanitized way. And it shows that key fact at a crucial time: right when
20 Uber was about to partner with RAINN and release the first Safety Report, demonstrating the
21 predominant motivation behind those acts. The Court was right to deny Uber's motion in limine on
22 this point.

23      Uber's new arguments do not support exclusion of this evidence. *First*, Uber says that
24 Uber's reaction to the story "pertained only to Crawford's settlement-related conduct—not the
25 occurrence of assaults or the safety of the Uber platform." Trial Br. at 1. That's misdirection. Mr.
26 Hasbun's candid acknowledgements of how he approached the Crawford story demonstrates
27 Uber's attitude towards safety, i.e., its attitude towards "the occurrence of assaults or the safety of
28 the Uber platform." And Uber's work with Crawford itself, as Hasbun himself acknowledged, was

1   litigation management in the guise of providing "support" to victims. Ex. D at 1101511-12 ("█████
2   ████████████████████████████████████████████████████████████████████████████████
3   ██████████████████████").

4   *Second*, Uber says that Mr. Hasbun's statements will "waste limited trial time litigating the
5   details and veracity of claims made by two sexual assault survivors in 2019." Trial Br. at 3. Not so.
6   The details of those women's stories are not important, nor are the details of the Crawford story in
7   general. What matters is how Mr. Hasbun—who had license to speak on behalf of the company and
8   was soon promoted to head of safety communications—understood Uber's response to the
9   allegations, and how he understood the veracity of Uber's safety executives like Mr. Fuldner
10  (whose credibility the jury must assess when he testifies live in this trial). In any event, Mr. Hasbun
11  will testify only by deposition, so the Court will control exactly what testimony comes in and what
12  does not on this topic.

13  *Third*, Uber complains that Mr. Hasbun's comments are too inflammatory. But the reason
14  Mr. Hasbun talked about "trash[ing] rape victims" is that he in fact trashed rape victims, and did so
15  to "████" the "██" of Uber's safety leaders and in service of Uber's efforts to protect its
16  reputation and promote its safety effort. The truth may be prejudicial, but only in the sense that
17  "[r]elevant evidence is inherently prejudicial." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th
18  Cir. 2000) (citation omitted). Rule 403 does not require that "facts [be] tailored and sanitized for
19  the occasion." *Id.*[2]

20  *Fourth*, Uber argues that "one employee's outrageous comments … about a 2019 news
21  story" have no connection to "the safety of the Uber platform in 2023 or Ms. Dean's claims." Trial
22  Br. at 4. But Mr. Hasbun was not a random "employee," but an important executive empowered to

---

[2] Uber cites *Aquino v. Cnty. of Monterey Sheriff's Dep't*, 2018 WL 3548867 (N.D. Cal. July 24, 2018), but that case involved a (probably inadmissible hearsay) military reprimand letter containing "charged language" about the plaintiff's character. *Id.* Here, the Hasbun comments are candid admissions of the defendant's own conduct. Uber also cites *United States v. Williams*, 663 F. Supp. 3d 1085 (D. Ariz. 2023), but that case involved a defendant's rap lyrics and expert testimony explaining the limited probative value and extreme prejudicial effect in that the specific context. *Id.* at 1102 (crediting testimony that "rap music generally and gangsta rap specifically 'is a form of fiction'" and that "[p]eople have a strong negative, often visceral reaction to rap music that they do not have to any other fictional forms, even more violent or sexually explicit forms"). There is no comparison between Mr. Hasbun's candid comments and a controversial art form.

speak for the company. And 2018-2020 was right when Uber will claim it left the "bad old days" behind and turned the page to a world of Safety Reports, non-profit partnerships, and safety features, all of which Uber will say was enough to avoid responsibility for the assault in this case. And Mr. Hasbun's comments go directly to the credibility and state of mind of the very same executives (like Mr. Fuldner) running the company when Ms. Dean was assaulted. *See Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 133 (3d Cir. 1997) (admitting executive's "ageist statements" in age discrimination case, even though "[t]hey were made approximately one year after the fact by individuals not involved in the decision" because "this evidence would make the existence of an improper motive for Ryder's termination more probable"). The fact that Uber's soon-to-be Director of Safety Communications thought that Uber's Senior Vice President of Safety told "█" concerning Uber's safety issues is clearly and substantially probative in this trial.

Dated: January 9, 2026

Respectfully submitted,

By: */s/ Sarah R. London*
Sarah R. London (SBN 267083)

**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
Rachel B. Abrams (SBN 209316)

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 426-5641
Facsimile: (415) 840-9435
rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*

|   |   |
|---|---|
| 1 | Roopal P. Luhana |
| 2 | **CHAFFIN LUHANA LLP** |
| 3 | 600 Third Avenue, 12th Floor<br>New York, NY 10016 |
| 4 | Telephone: (888) 480-1123<br>Facsimile: (888) 499-1123 |
| 5 | luhana@chaffinluhana.com |

*Co-Lead Counsel*

### FILER'S ATTESTATION

I am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: January 9, 2026     By:   */s/ Andrew R. Kaufman*
                                          Andrew R. Kaufman