[Submitting counsel below]

UNITED STATES DISTRICT COURT
OF NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: UBER TECHNOLOGIES, INC., PASSENGER SEXUAL ASSAULT LITIGATION** | No. 3:23-md-03084-CRB <br><br> **PLAINTIFF'S TRIAL BRIEF RE: DEFENDANTS' TRIAL MOTION TO EXCLUDE COMPANY-CULTURE EVIDENCE** <br><br> Judge: Honorable Charles R. Breyer <br> Ctrm.: D. Ariz., 501 |
| This Document Relates to: <br><br> *Jaylynn Dean v. Uber Techs., Inc.*, <br> N.D. Cal. No. 23-cv-06708 <br> D. Ariz. No. 25-cv-4276 | |

UNITED STATES DISTRICT COURTS
DISTRICT OF ARIZONA
PHOENIX DIVISION

| | |
|---|---|
| JAYLYNN DEAN, <br><br> Plaintiff, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., et al., <br><br> Defendants. | No. 25-cv-4276-PHX-CRB <br><br> Judge: Honorable Charles R. Breyer <br> Ctrm.: 501 |

**RESPONSE TO TRIAL BRIEF**

**Korean Karaoke.** Plaintiff withdrew (before Uber filed its brief) her designations of the Kalanick deposition related to the incident at the Seoul karaoke bar. But it bears emphasis that Uber's arguments for excluding evidence of the incident underscore why the Hasbun Slack messages at issue in the other briefing pending before the Court (ECF 4952, 4961, 4962) are admissible.

**"Boob-er."** Mr. Kalanick's joke about "women on demand," calling his company's service "Boob-er," is relevant because it shows the company's cavalier attitude towards the known problem of predatory drivers using Uber as an opportunity to exploit women passengers (just as Mr. Turay did). The statement is not hearsay because it is not offered for the truth of any matter.

**India Incident.** At the pretrial conference, the Court recognized that "how [Uber] handled claims abroad, such as in India, may very well inform their judgment as to what they did in the United States." 1/6/26 H'rg Tr. at 24:10-14. Evidence of Uber's response to the India incident is relevant for that reason.

**I. Plaintiff withdrew designation of testimony concerning the Korean karaoke incident, but Uber's arguments underscore why the Hasbun Slack chats are admissible.**

Before Uber filed its trial brief, Plaintiff withdrew designation of the Kalanick testimony concerning the Korean karaoke bar incident. So, the trial brief is moot on that point. But it bears emphasis that Uber argues this evidence is irrelevant because:

> In mid-2017, current CEO Dara Khosrowshahi replaced Mr. Kalanick, ushering in a period of widespread change at the company. That included a concerted effort to reinforce commitments to transparency, accountability, and responsibility, reinforcing a "cultural value" to "Do the right thing, period," reflecting a top-down, companywide commitment "to take responsibility for your actions and in your best judgment do the right thing in terms of … your everyday decision-making."

Trial Br. at 2-3 (citation omitted). But Uber has similarly moved to exclude statements from Andrew Hasbun (ECF 4952), even though those statements and the conduct they concerned occurred in 2019, nearly two years after Mr. Khosrowshahi supposedly cleaned up the company's act. Uber's argument here underscores the probative value of Mr. Hasbun's comments, as they directly rebut Uber's claim of "widespread change at the company" post-Kalanick.

- 1 -

PL'S TRIAL BRIEF RE:TRIAL MOTION TO
EXCLUDE COMPANY-CULTURE EVIDENCE
N.D. CAL. NO. 3:23-MD-03084; D. ARIZ. NO. 25-CV-4276

**II. Mr. Kalanick's description of Uber as "Boob-er" illustrates the cavalier attitude the company adopted regarding the risks of drivers using the service to meet women.**

In 2014, GQ reported that Mr. Kalanick made "a wise crack about women on demand: 'Yeah, we call that Boob-er.'" Mickey Rapkin, *Uber Cab Confessions*, GQ (Feb. 27, 2014), https://www.gq.com/story/uber-cab-confessions. Uber knew that its service appealed to predatory drivers who saw an opportunity to reach women in a captive environment. It knew that predators "look for victims who are: easily accessible (e.g., in close proximity, isolated), vulnerable (e.g., intoxicated, alone), lacking credibility … unlikely to be believed if they were to report." ECF 4625-2 (MSJ Opp., Ex. 2) at 3585. Uber's research confirmed: "[T]he majority of these drivers would most likely not have engaged in sexual misconduct had they not been in this specific situation with this 'opportunity' for sexual misconduct." ECF 2625-3 (MSJ Opp., Ex. 3) at .0005. That appeal caused the assault in this case: Mr. Turay viewed inappropriate behavior as one of the perks of his job, testifying that he repeatedly engaged in sexually inappropriate conduct, including flirting and asking passengers intimate sexual questions about their orgasms. ECF 4625-21 (MSJ Opp., Ex. 21) at 77-78. That boundary-pushing culminated in the rape of Ms. Dean.

Mr. Kalanick's comments are relevant because they show that the highest levels of company leadership thought that this known problem was amusing. At the pretrial conference, the Court indicated that evidence of Uber's response to media stories is admissible "to the extent it reflects a mindset or an attitude or an approach by the defendant to these types of allegations or … to the subject matter." 1/5/26 H'rg Tr. at 19:15-21. Just so here.[1]

---

[1] Uber cites *Aquino v. Cnty. of Monterey Sheriff's Dep't*, 2018 WL 3548867 (N.D. Cal. July 24, 2018), but that case involved a (probably inadmissible hearsay) military reprimand letter containing "charged language" about the plaintiff's character. *Id.* at 4 Here, the statements at issue are Mr. Kalanick's own, not those of a respected third party that the jury might grant unwarranted credence to. Uber also cites *United States v. Williams*, 663 F. Supp. 3d 1085 (D. Ariz. 2023), but that case involved a defendant's rap lyrics and expert testimony explaining the limited probative value and extreme prejudicial effect in that the specific context. *Id.* at 1102 (crediting testimony that "rap music generally and gangsta rap specifically 'is a form of fiction'" and that "[p]eople have a strong negative, often visceral reaction to rap music that they do not have to any other fictional forms, even more violent or sexually explicit forms"). There is no comparison between Mr. Kalanick's candid comment and a controversial art form. Finally, Uber cites *Chaudry v. Smith*, 2020 WL 869115 (E.D. Cal. Feb. 21, 2020), but that case involved media reports "contain[ing] the statements of third parties that cannot be attributed to defendants," and admission would have created "a likelihood that the jury would attribute these statements to the defendants." *Id.* at *17. Here, the statement at issue, coming from the then-CEO, is a party-opponent admission.

Uber argues that the article is hearsay. It is not. The content of the article goes to whether Mr. Kalanick made the comments in question, not to the truth of any matter (the service is not actually called "Boob-er."). *See*, *e.g.*, *Schwartz v. Ryan*, 2010 WL 3244916, at *24 (D. Ariz. Apr. 28, 2010) ("evidence is not hearsay when it is used only to prove that a prior statement was made and not to prove the truth of the statement"); *Kelsey, LLC v. Francis*, 2009 WL 909530, at *28 (D. Ore. Apr. 3, 2009) ("To the extent Plaintiff is offering these statements merely to establish … that Kesey actually said these words … the statements are not being offered for the truth of the matter asserted and are not hearsay, and therefore are admissible.").

### III. Uber's response to the sexual assault in India is relevant to evaluating its subsequent responses to sexual assault in the United States.

In 2014, an Uber driver took a woman to an isolated area and raped her. *See* Mike Isaac, *Uber Is Sued by Woman Who Was Raped by One of Its Drivers in India*, N.Y. Times (June 15, 2017), https://www.nytimes.com/2017/06/15/technology/uber-india-rape-lawsuit.html. Mr. Kalanick's testimony shows how Uber executives reacted to the allegation: challenge victim credibility, to the point of hiring a private investigator to pry into her medical records. *See* Trial Br., Ex. 5. At the pretrial conference, the Court recognized that "how [Uber] handled claims abroad, such as in India, may very well inform their judgment as to what they did in the United States." 1/6/26 H'rg Tr. at 24:10-14. Just so. The incident shows Uber's knowledge of and reaction to sexual assaults.

Uber argues that Mr. Kalanick's testimony on this point is nevertheless inadmissible because of *how* Uber attacked the victim's credibility—obtaining and prying through her medical records. But the extreme lengths to which Uber went to challenge this victim's account is illustrative of the company's knowledge and state of mind in relation to the risk of sexual assault. *See* Fed. R. Evid. 404(b)(2) (evidence of other acts "may be admissible for another purpose, such as proving … knowledge"); *In re Uber Rideshare Cases*, JCC 5188 (Aug. 29, 2025 Order) [filed at ECF 4344-2] at 57 (denying motion in limine to exclude evidence of New Delhi incident, and explaining the incident is admissible if "relevant to … Uber's policies for handling sexual assault"). Evidence of Uber's reaction to sexual assault incidents, especially widely publicized ones, also

goes to how drivers would understand the company's de facto tolerance of sexual misconduct (indeed, Mr. Turay first applied to drive for Uber this same year). Uber objects to the word "steal" in the question posed to Mr. Kalanick; but the witness agreed that it was "wrong" for an Uber executive to use a "private investigator" to obtain a person's "private medical records" making "steal" an appropriate term. Trial Br. Ex. D at 307-08.[2]

Uber argues that admission of this testimony will require litigation of "collateral questions, like how it handled the 2014 assault, how Mr. Alexander obtained the medical records, and how the company … g[ot] them from him." Trial Br. at 5. No, it will not. There is no additional evidence in the record on any of those points; Mr. Kalanick's brief testimony stands alone.

Finally, Uber argues that a Bloomberg article discussing the incident is hearsay. But the bulk of Plaintiff's designations from the Kalanick deposition on this topic are about his personal knowledge of the incident and Uber's response, not the news article. *See* Trial Br., Ex. D at 305:19-306:24, 307:12-308:25, 309:2-8, 309:22-310:8, 311:16-19. Only at the end does Plaintiff introduce an exhibit, not the article itself, but an email from Uber's then Vice-President of Policy and Communications to Mr. Kalanick attaching the article. *See* ECF 4835-33 (Pls' MIL Opp., Ex. 33) at 312:2-8.[3] The article within the email is offered not for its truth, but rather to show that Mr. Kalanick, as Uber's CEO, received information regarding the details of the India incident and Uber's response to it. *See id.* at 311:16-19, 312:2-8) ("Q: Did you own comms person send you the information outlining all of these details of – of what happened? A: I'm not sure. … Q: And if we go to the top, Jill Hazelbaker, she … she worked for you … in comms right? A: Yes. Q: and on June 7, 2017, she emailed you this article that attached from Bloomberg, right? A: This looks like an email, yes.").

---

[2] Uber cites *In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 1876896 (D. Ariz. Apr. 18, 2018), but that case excluded evidence of deaths from an unrelated design defect that was apparently resolved years before the plaintiff was implanted with the medical device at issue. *Id.* at *2. Here, the evidence will show Uber faces the same sexual assault problems now as it did in 2014.

[3] Uber did not include page 312 in its Exhibit D.

-4-

PL'S TRIAL BRIEF RE:TRIAL MOTION TO
EXCLUDE COMPANY-CULTURE EVIDENCE
N.D. CAL. NO. 3:23-MD-03084; D. ARIZ. NO. 25-CV-4276

Dated: January 12, 2026                    Respectfully submitted,

By: */s/ Sarah R. London*
   Sarah R. London (SBN 267083)

   **GIRARD SHARP LLP**
   601 California St., Suite 1400
   San Francisco, CA 94108
   Telephone: (415) 981-4800
   slondon@girardsharp.com

By: */s/ Rachel B. Abrams*
   Rachel B. Abrams (SBN 209316)

   **PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
   555 Montgomery Street, Suite 820
   San Francisco, CA 94111
   Telephone: (415) 426-5641
   Facsimile: (415) 840-9435
   rabrams@peifferwolf.com

By: */s/ Roopal P. Luhana*
   Roopal P. Luhana

   **CHAFFIN LUHANA LLP**
   600 Third Avenue, 12th Floor
   New York, NY 10016
   Telephone: (888) 480-1123
   Facsimile: (888) 499-1123
   luhana@chaffinluhana.com

   *Co-Lead Counsel*

## FILER'S ATTESTATION

I am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. L.R. 5-1(i)(3), I attest that the signatories above concurred in this filing.

Dated: January 12, 2026          By:   */s/ Andrew R. Kaufman*
                                      Andrew R. Kaufman